Elizabeth A. Kramer (SBN 293129)
*elizabeth@eko.law*
**ERIKSON KRAMER OSBORNE LLP**
44 Tehama St.
San Francisco, California 94105
Tel: (415) 635-0631
Fax: (415) 599-8088

Benjamin F. Johns (*pro hac vice*)
*bfj@chimicles.com*
Samantha E. Holbrook (*pro hac vice*)
*seh@chimicles.com*
Alex M. Kashurba (*pro hac vice*)
*amk@chimicles.com*
**CHIMICLES SCHWARTZ KRINER
 & DONALDSON-SMITH LLP**
361 W. Lancaster Avenue
Haverford, Pennsylvania 19041
Tel: (610) 642-8500
Fax: (610) 649-3633

*Counsel for Plaintiffs and the Putative Class*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHERIE DEBONO and VICTORIA BARBER individually and on behalf of all others similarly situated,<br><br>                    Plaintiffs,<br><br>        v.<br><br>CEREBRAL, INC.<br><br>                    Defendant. | Case No. 3:22-cv-03378<br><br>**PLAINTIFFS' CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs ("Plaintiffs") Cherie Debono and Victoria Barber individually, and on behalf of all others similarly situated, by and through their undersigned counsel, bring this action against Defendant Cerebral, Inc. ("Defendant" or "Cerebral").

## INTRODUCTION

1. Cerebral is a subscription-based telemedicine company that provides its customers with access to therapy, counseling, and medication for ADHD, anxiety, depression, and other mental health conditions.

2. Cerebral describes itself as a "mental health subscription [service] that provides clients with ongoing, comprehensive access to online care and medication management for a monthly rate."[1]

3. Cerebral offers clients several subscription options depending on the conditions for which treatment is sought. These plans can include medication, therapy, coaching, counseling, or a combination of treatments.

4. According to its website, a subscription includes "regular assessments, video/phone appointments with your prescriber, medication management, and medication delivery" as included in the price of a subscription. Cerebral advertises its plans as "FSA/HSA eligible" and leads consumers to believe that they can "cancel anytime" if they are unsatisfied with their subscription. It also promises subscribers that they will have access to various points of contact at Cerebral from 6am-6pm PT Monday through Friday and from 7am-4pm PT Saturdays and Sundays, and states that "[a]ll outreach will receive a response within one business day."

5. Cerebral lures customers with these deceptive promises only to trap them into a automatically renewing subscription that fails to provide access to adequate prescribers and counselors, makes scheduling mental health appointments unnecessarily tedious, and is virtually impossible to cancel. Customers are thus stuck paying for a renewing subscription they do not want which does not provide the benefits that Cerebral promises.

6. According to recent reporting by *Forbes,* leaked internal documents detail Cerebral's

---

[1] *See* Cerebral FAQ | Care model, medication, cost, anxiety, depression, and more.

PLAINTIFFS' CLASS ACTION COMPLAINT

"strict protocol for refunds."[2] The article details consumer experiences attempting to obtain refunds from Cerebral and the difficulties they face in doing so, revealing that Cerebral has certain internal protocols in place as to when a representative can and cannot issue a refund. Customers are charged when the only available appointments are weeks away, and some customers do not even have available counselors, therapists or prescribers in their geographic location. Yet none of this is clear to customers up front: when customers sign up, their credit card is billed before they can see the schedule showing provider availability.  What customers are not told is that Cerebral's internal refund policies make obtaining a refund nearly impossible for many people.

7.     Cerebral's business model is targeted to appeal to individuals suffering from a wide variety of mental health conditions, who need treatment and medication. Yet Cerebral exploits those vulnerabilities by luring customers in with promises for prescription medication and treatment plans, and then fails to deliver on those promises and intentionally customers' ability to cancel the program.

8.     While Cerebral's marketing makes it seem as though consumers can "cancel anytime," Cerebral's cancellation process is unwieldy, requiring consumers to send an email to request cancellation, which then has to be reviewed and approved by a Cerebral representative before the cancellation becomes effective. Unlike other apps, and further upending consumer expectations, Cerebral also does not allow customers to cancel by simply deleting the Cerebral app from their phones. Instead, up until very recently, consumers were only able to cancel by going through the cumbersome process of emailing a designated email address and waiting for Cerebral to "approve" the cancellation request, which for many consumers results in a month (or more) of paying fees for an unwanted subscription.

9.     Cerebral's concerted pattern of misrepresentations, smokescreens, and omissions, may benefit Cerebral's bottom line, but they are unfair, deceptive, and fraudulent and have benefited Cerebral at the subscribers' expense. As set forth below, Plaintiffs bring this action for violations of the California

---

[2] Katie Jennings, *Getting a Refund From Mental Health Startup Cerebral Can Take Its Own Toll on Customers*, FORBES (Feb. 18, 2022), available: Getting A Refund From Mental Health Startup Cerebral Can Take Its Own Toll On Customers (forbes.com).

PLAINTIFFS' CLASS ACTION COMPLAINT

Automatic Renewal Law, False Advertising Law, Unfair Competition Law, Consumer Legal Remedies Act, and various common law claims.

## **JURISDICTION AND VENUE**

10.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 of the Class Action Fairness Act of 2005 because: (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one plaintiff and the defendant are citizens of different states. This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

11.     Venue properly lies in this judicial district pursuant to 28 U.S.C. § 1391 because Cerebral is headquartered within this judicial district, transacts business in this district, and is subject to personal jurisdiction in this district. Additionally, Cerebral has advertised in this district and has received substantial revenue and profits from its sales of its subscription services in this district.  Therefore, a substantial part of the events and/or omissions giving rise to the claims herein occurred, in part, within this district.

12.     This Court has personal jurisdiction over Cerebral because Cerebral maintains its headquarters within this judicial district, has conducted substantial business in this judicial district, and intentionally and purposefully placed its products into the stream of commerce within the state of California and throughout the United States. Moreover, the Terms and Conditions prepared by Cerebral and entered into by Plaintiffs and Class members specifies that "any claim or dispute arising in connection with the Platform or Services shall be decided exclusively by a court of competent jurisdiction located in San Francisco County, California, and you consent to the personal jurisdiction of any venue in such courts and waive any and all jurisdictional and venue defenses or objections otherwise available."[3]

---

[3] https://cerebral.com/terms-and-conditions

PLAINTIFFS' CLASS ACTION COMPLAINT

## THE PARTIES

### Plaintiffs

### Plaintiff Victoria Barber

13.     Plaintiff Victoria Barber is, and at all relevant times has been, a resident and citizen of the State of Washington.

14.     Plaintiff Barber signed-up for a Cerebral membership on March 17, 2022. The medication management plan she signed up for included one appointment with a prescriber and one appointment with a Care Counselor each month.

15.     On March 22, 2022, Plaintiff Barber attended her first scheduled appointment with her Care Counselor. The appointment only ran for ten minutes, and her Care Counselor was dismissive of her mental health history and stated that Plaintiff Barber could not be helped.

16.     Following this appointment, Plaintiff Barber requested cancellation by contacting her Cerebral care team. She was told that she needed to go to the message section of the Cerebral app because another appointment had been scheduled by a Cerebral Care Counselor with another provider.

17.     Plaintiff Barber did not attend an appointment with a Cerebral provider during the month of April.

18.     On April 19, 2022, Plaintiff Barber made a renewed cancellation request by emailing the cancellation form pursuant to the instructions provided on Cerebral's FAQ page. When she later asked about a refund for April, a Cerebral representative stated that they could only offer a partial refund for the first month of her membership.

19.     Then on April 22, 2022, she was charged $85 for a renewal of her subscription. As her cancellation request was still pending, Plaintiff Barber contacted her care team to ask about getting a refund for this charge. She was denied a refund, but Cerebral finally confirmed that it had terminated her account that day.

20.     Plaintiff Barber expressed an intent to opt out of resolving any disputes with Cerebral through individual arbitration pursuant to Section 14 of the Cerebral Terms and Conditions, updated May 14, 2022, which she indicated in a letter emailed to Cerebral on May 27, 2022.

21.    Had Plaintiff Barber been aware of Cerebral deceptive billing and cancellation practices, she would not have signed-up or paid for a Cerebral subscription.

**Plaintiff Cherie Debono**

22.    Plaintiff Cherie Debono is, and at all relevant times has been, a resident and citizen of the State of California.

23.    Plaintiff Debono signed-up for a Cerebral membership on February 7, 2022. The medication management plan she signed up for included one appointment with a prescriber and one appointment with a Care Counselor each month.

24.    On or around February 11, 2022, Plaintiff Debono called customer service to cancel her Cerebral subscription because she was having difficulty getting her medication filled. The customer service representative with whom she spoke stated that there was no way of getting a refund for her membership if she decided to cancel. While the customer service representative assured Plaintiff Debono that any issues she was having with getting her medication filled would not happen again, it took until February 19 for Plaintiff Debono to receive her medication.

25.    On or around March 18, 2022, Plaintiff Debono again requested cancellation of her Cerebral subscription. Cerebral offered her a 30% discount on her next monthly membership charge instead.

26.    Plaintiff Debono was charged for her Cerebral subscriptions for the months of February, March, April, and May 2022.

27.    Having unsuccessfully sought to cancel her Cerebral subscription twice, on or around May 9, 2022 she filled out and emailed to Cerebral the cancellation form. Cerebral was unresponsive to the first form, so Plaintiff Debono filled out and submitted a second one. Cerebral has not responded to either form. To date, she continues to receive automated emails from Cerebral asking her to schedule an appointment with her prescriber.

28.    Plaintiff Debono expressed an intent to opt out of resolving any disputes with Cerebral through individual arbitration pursuant to Section 14 of the Cerebral Terms and Conditions, updated May 14, 2022, which she indicated in a letter emailed to Cerebral on May 27, 2022.

29.     Had Plaintiff Debono been aware of Cerebral deceptive billing and cancellation practices, she would not have signed up or paid for a Cerebral subscription.

**Defendant**

30.     Defendant Cerebral Inc. owns and manages Cerebral, a mental health telemedicine company that offers online care and medication management for anxiety, depression ADHD, and more.  It is headquartered at 181 2nd Street, San Francisco, CA 94105.

## FACTUAL ALLEGATIONS

A.     **Cerebral's Deceptive Marketing Practices and Misrepresentations are Designed to Lure Subscribers with False Promises**

31.     According to the National Institute of Mental HealthTrust Source, nearly 1 in 5 U.S. adults live with mental illness.[4] Accessibility to mental health services is shifting, with social media advertising and access to online therapy and telemedicine.

32.     In the spring of 2020, COVID-19 brought about rising levels of stress, anxiety and depression. But stay-at-home orders and a national emergency prompted many psychiatric and psychotherapy offices to shut down and cancel in-person appointments. Online mental health providers thus surged in popularity during the COVID-19 pandemic as demand for services grew and accessibility to in-person providers was sparse.

33.     The digital mental health space was growing rapidly even before the pandemic, but stress and anxiety brought on by the pandemic have accelerated demand for virtual behavioral health services. Telehealth represented less than 1% of outpatient care before the pandemic for both mental health and substance use and other concerns. However, at the pandemic's peak, telehealth represented 40% of mental health and substance use outpatient visits during the March-August 2020 period. Telehealth use has remained strong for mental health and substance use treatment, still representing 35% of outpatient visits.[5]

---

[4] https://www.healthline.com/health/mental-health/cerebral-review

[5] Justin Lo, *Telehealth Has Played an Outsized Role Meeting Mental Health Needs During the COVID-19 Pandemic*, KFF (Mar. 15, 2022), available: https://www.kff.org/coronavirus-covid-

34.     Cerebral capitalized off of this trajectory. The privately held for-profit startup launched in January 2020 and has grown rapidly at over 60% month-over-month, propelled by increased demand for behavioral healthcare services during the pandemic.

35.     Cerebral's strategy to lure and retain clients has been successful: its estimated annual revenue is $274 million, and it is reportedly valued at $4.8 billion. Cerebral employs deception in the structure of its autorenewal scheme in various ways, all designed to attract and retain customers with the bait of services that it never intends to provide. While Cerebral's deceptive web has several different components that can independently ensnare a consumer, taken together the components all lead to a common and predictable outcome: unintended subscriptions of Cerebral's service.

36.     First, in exchange for customer's credit/debit card information, Cerebral promises access to prescriber visits, therapy, counseling and prescriptions to help with anxiety, depression, insomnia, ADHD and more mental health services.

37.     Cerebral has several treatment plans that customers can choose from: Medication + Care Counseling Plan, Medication + Therapy Plan, Therapy Plan, Medication + Coaching Plan, Coaching Plan, Nutrition and Weigh Loss Medication Plans, or an Opioid Use Treatment Plan. The company offers a $30 introductory subscription fee, which then autorenews at a higher monthly rate of between $85 to $325 depending upon the plan.

38.     Depending on the type of plan selected, Cerebral promises access to a variety of services and treatments. For example, Cerebral promises customers will have access to a "Care Counselor" to support them along their journey. The Care Counselors hold a master's or bachelor's degree in a relevant field and undergo "extensive, ongoing professional development training." According to Cerebral, this Care Counselor provides "behavioral health tools, strategies, and education during monthly video or phone sessions" and is available to chat "at any time throughout the month." The Care Counselors are "well-trained in therapeutic techniques, such as behavioral activation, motivational interviewing, and

19/issue-brief/telehealth-has-played-an-outsized-role-meeting-mental-health-needs-during-the-covid-19-pandemic/#:~:text=There%20has%20been%20a%20rapid,than%201%25%20of%20outpatient%20visits.

PLAINTIFFS' CLASS ACTION COMPLAINT

more" but not all are licensed therapists. These Care Counselors are intended to support medication treatment journey, "focus on the now," and provide coping strategies to help customers manage mental health symptoms. Cerebral represents that subscribers will meet with their Care Counselors once a month.

39.    Cerebral employs nurse practitioners or doctors that can prescribe medication ("prescribers"). Cerebral represents that customers will have medication mailed monthly, and will be provided monthly meetings with the assigned Care Counselor to discuss progress and learn new skills. Cerebral also promotes access to a prescriber to ensure that customer's prescriptions and refills stay "on track."

40.    With regard to therapy treatment, Cerebral assures "weekly video/phone sessions with a licensed therapist," and "regular progress tracking by prescriber & therapist." According to Cerebral, its Therapists hold doctoral or master's degrees in relevant fields, maintain or are in the process of obtaining licenses to practice in one or more states, and undergo extensive, ongoing professional development training. The Therapists are intended to diagnose psychological conditions, focus on the past and present, and treat a variety of mental illnesses. Cerebral also represents that subscribers can meet with their Therapist up to four times a month and can "chat securely with your therapist anytime."[6]

41.    In its FAQ section of the website, Cerebral represents that customers will be able to see a prescriber in "typically less than 7 days" after signing up. It even provides an option to see a prescriber sooner than the schedule appointment, telling customers that they can message their coordinator to determine if earlier appointments are available.

42.    Cerebral touts its telemedicine model as allowing customers to "schedule visits with your prescribing provider, therapist, or care Counselor when it's most convenient for you."[7]

43.    Customers are thus induced to sign up for Cerebral's services based upon Cerebral's representations that they will have regular access to available trained counselors, therapists, or

---

[6] *See generally* https://cerebral.com/plans/therapy; https://cerebral.com/plans/medication-therapy; https://cerebral.com/.

[7] https://cerebral.com/faqs

prescribers. It is only after customers are locked into a recurring billing cycle that they realize the lack of services available to them and the near impossibility of cancelling Cerebral's subscription.

**B.     Cerebral's Business Model Puts Profits and Growth Over Patients**

44.     The ability of customers to schedule an appointment is contingent upon the availability of the counselors, therapists or prescribers in a certain geographic location, which is a fact that is not disclosed to customers until they are already locked into an auto-renewing subscription. Customers are charged regardless of whether services are utilized or not.

45.     Accordingly, depending on where they live, some customers might be able to schedule a next day appointment, while others may have to wait weeks, and are billed just the same. This has led many customers to leave negative reviews on Trustpilot and the Better Business Bureau who question why they are being charged when the only appointments are weeks away. None of this is made clear to customers up front: when a customer signs up for Cerebral's services, their credit card is billed before they can even see the schedule showing provider availability for their geographic location and mental health issue.[8]

46.     Despite its representations on its website that subscribers can "cancel any time," many customers have found cancelling their month-to-month subscription to be unnecessarily cumbersome and difficult to successfully cancel. Unbeknownst to customers, Cerebral has an internal refund policy that separates out customers who "had the ability to schedule with a clinician within a reasonable time frame" and those were unable to schedule "as a result of clinician capacity issues." However, the "reasonable time frame" is undefined in either Cerebral's terms and conditions or its billing policy.

47.     Customers who demand refunds or cancellations, such as Plaintiff Debono, are sometimes offered a 30% discount to remain customers of Cerebral. Other consumers have to resort to threatening legal action or publicly shaming the company before Cerebral will issue them a partial or full refund for services unrendered.

---

[8] *See* Katie Jennings, *Getting a Refund From Mental Health Startup Cerebral Can Take Its Own Toll On Customers*, FORBES (Feb. 18, 2022), available:
https://www.forbes.com/sites/katiejennings/2022/02/18/getting-a-refund-from-mental-health-startup-cerebral-can-take-its-own-toll-on-customers/?sh=71a931b91cc6.

48.     Former Cerebral Vice President, Matthew Truebe, claims in a recent labor lawsuit that Cerebral was intent on recruiting new patients and retaining current ones, and he claims that the company "egregiously put profits and growth before patient safety," including overprescribing medications for attention deficit hyperactivity disorder ("ADHD").

49.     Cerebral, which has cared for more than 200,000 patients since launching in 2020, was valued at $4.8 billion following a $300 million funding round led by SoftBank Vision Fund 2 in December 2021.

50.     Cerebral reportedly spends millions of dollars a month for online ads on TikTok, Instagram and Google, all in an effort to sign up new customers and grow its subscriber base.

51.     Cerebral has recently come under scrutiny for its prescribing practices. The company recently announced that its CEO and co-founder, Kyle Robertson, stepped down from his role in the company. The leadership change comes as Cerebral is facing an investigation by the Department of Justice for its prescribing practices as "possible violations" of the Controlled Substances Act. Cerebral Medical Group received a grand jury subpoena from the U.S. Attorney's Office for the Eastern District of New York last month.

52.     Cerebral's goal of maximizing its bottom line came at a hefty price to customers. Not only were customers paying exorbitant amounts for the subscription fees, but many were paying for services never rendered as Cerebral had a habit of cancelling scheduled appointments or providers never showing up for scheduled appointments. Some customers were even told—after filling out the initial online survey and paying for a subscription for the service—that they are not a candidate for telemedicine.[9]

53.     Customers report that their Care Counselors were often not available to help navigate scheduling or respond to inquiries about missed appointments or lack of availability, and customers were left without access to any of Cerebral's providers for weeks on end.

54.     Many customers also reported that Cerebral was not covered by their insurance providers,

---

[9] *See, e.g.* https://www.trustpilot.com/review/cerebral.com?page=2.

and thus they were left paying entirely out of pocket for the subscription costs plus the additional charges for prescription medication.

55.     Not only were customers charged exorbitant fees for services that the company was unable to provide, but many of them suffered physically as well from incorrect dosing or missing medications due to errors with Cerebral issuing prescriptions appropriately. Some customers even reported experiencing withdraw from the lack of timely prescription refills.

**C.     Cerebral's Autorenewal Scheme Is Designed to Trap Clients into Paying for Unwanted Services**

56.     The following paragraphs describe the process for enrolling in Defendant's automatically renewing, monthly-subscription in or around the time of Plainttiffs' enrollment.

57.     Consumers interested in signing up for Cerebral can do so through Cerebral's website or directly through their smartphones by downloading the Cerebral App. Both the Cerebral App and the Cerebral website feature the same sign-up process, contained the same representations, and required the consumers to complete the same mental health evaluation prior to payment.

58.     First, a consumer is required to submit their email, first and last name, and telephone number in order to create an account on either Cerebral's website or mobile app.

59.     Once Cerebral has obtained the consumer's personal and contact information, the company's website and mobile app require consumers to answer a series of questions which "serve as a preliminary screen to establish whether medication is the correct course of treatment" for the consumer. The evaluation is comprised of nine multiple-choice questions which ask how often a consumer feels nervous, anxious restless, etc., whether these feelings have interfered with a consumer's activities of daily living, and the specific triggers for the enumerated feelings.

60.     The evaluation is used by Cerebral to immediately provide results that grade a consumer's mental health condition, such as anxiety or depression, which can range from mild to severe according to Cerebral's scale.

61.     Immediately below a consumer's evaluation results—irrespective of where such results fall on Cerebral's scale of severity—the consumer is assured that there's "room for improvement" and

Cerebral can get the consumer back to "feeling like your true self."

62.     To progress to the next page, a consumer must click a button labeled "Choose Your Plan," which is paired with a statement that reads, "[o]ver 350,000 people have used Cerebral to treat their mental health conditions online and **most Cerebral members with conditions like anxiety, depression, insomnia, and ADHD report feeling improvements within 60 days!**"

63.     By asking consumers for sensitive, personal information concerning their mental health struggles and lifestyle, Cerebral fosters consumers' reasonable impression that they can expect to receive a highly personalized treatment plan based on the results of Cerebral's evaluation.

64.     In fact, before a consumer even completes the sign-up process, Cerebral uses the consumer's previously obtained email address to send them a promotion that states, "Congratulations on taking your first step toward comprehensive mental health care! **Your care team is ready to design your custom treatment plan** and support you every step of the way." The promotional email goes on to state that a consumer can get started on their mental health journey for only $7 per week for their first month.

65.     Minutes after sending a promotional email, Cerebral uses the consumer's previously obtained telephone number to send the following text message to ensure that the consumer continues with their sign-up process: "Hi, it's Cerebral. Keep going to state your care for as little as $7/week for your first month (billed by the month)" followed by a link to Cerebral's membership sign-up page.

66.     At no point in either the promotional email or the promotional text message does Cerebral inform a consumer that the membership rate will be **automatically** charged to the consumer's method of payment on a monthly-basis.

67.     Cererbral does not actually use the information obtained by the evaluation to personalize a consumer's experience. Instead, the onboarding process culminates in the platform offering the same three plan options: "Medication + Care Counseling," "Medication + Therapy," or "Therapy." The most expensive plan, "Medication + Therapy," is highlighted as the "most effective."

68.     To choose one of the three plans, a consumer must click a "Start" button. Above the "Start" button in substantially smaller font reads, "billed monthly" and "cancel anytime." Again, at this

time, a consumer is not informed that the subscription will be **automatically** billed on a monthly-basis.

69.     On the following page, where a consumer is required to enter payment information, Cerebral reinforces that by subscribing to the chosen service, a consumer will received sessions with "a licensed therapist," "evidence-based talk therapy," and "regular progress tracking."

70.     After navigating the same visually overwhelming page filled with different font colors, sizes, logos and extraneous information, at the very bottom, a consumer is required to enter their credit/debit card information. The payment section appears as follows:



71.     This is the first and only time during Cerebral's multi-step sign-up process that the Company provides any information regarding the terms of the automatic renewal subscription or the process of cancelling it. As shown above, it is in substantially smaller print than the remaining text on the page. It is not formatted to stand-out to the consumer as important information; it is not underlined, bolded, labeled, or differentiated in any meaningful way than the rest of the words on the payment page.

To the contrary, the small low-contrast print has the effect of obscuring the information and allowing a consumer to glaze right over the paragraph before clicking the "Subscribe" button.

72. In the instance that a consumer is able to distinguish the obscured text depicted above, Cerebral informs them that, "[b]y clicking 'Subscribe,' you agree to Cerebral's Terms of Use and Privacy Policy," which are hyperlinked for the consumer to access. Unfortunately for the consumer, the cancellation policy outlined in Cerebral's Terms of Use differs from the cancellation policy as described during the sign-up process.

73. According to the terms described to the consumer during the sign-up process, a Cerebral user can cancel their subscription at any time by simply emailing the company before the end of the billing period. However, according to the Terms of Service prior to June 2, 2022, cancelling a Cerebral membership is not nearly this easy:[10]

How do I cancel my subscription? 

Please email cancel@getcerebral.com with your request for cancellation by 9am PT one business day before your scheduled billing date to cancel your account. Our team will send a cancellation form for you to initiate the request. We respond to all cancellation requests within a few hours, but please note that your account will remain active until your cancellation is confirmed by one of our coordinators.

Once your cancellation has processed, you will continue to have access to your records through Cerebral, but your treatment and medication plan will be suspended.

Our subscription model is a monthly recurring charge and the billing period begins from the time of registration.

More information on our Recurring Billing Policy.

74. Prior to June 2, 2022, a consumer could only cancel their Cerebral subscription by emailing "cancel@getcerebral.com" with a request for cancellation by 9 a.m. one business day prior to

---

[10] The following screenshot was accessed and captured using the Wayback Machine. (https://web.archive.org/web/20220129163641/https://cerebral.com/faqs).

PLAINTIFFS' CLASS ACTION COMPLAINT

the consumer's scheduled billing date. Importantly, this email alone does not suffice to cancel the consumer's subscription, it is merely a request to cancel. A consumer was required to wait for the Cerebral team to respond to the cancellation request with a cancellation form, which requires additional information from the consumer to progress in the cancellation process. Again, a consumer submitting the cancellation form did not complete the cancellation process. The consumer had to wait until the cancellation request is confirmed by the Cerebral team in order for the consumer's subscription to actually be cancelled. Prior to receiving confirmation, a consumer's account remained active and subject to Cerebral's automatic billing practices.

75.     While Cerebral's Terms of Use prior to June 2, 2022 stated that the Cerebral team would "respond to all cancellation requests within a few hours," consumers reported substantially longer response periods that caused their account to remain active and, in some cases, experience additional unwanted membership charges.

76.     The following Reddit thread from March 2022 demonstrates the difficulty that Cerebral members experienced in attempting to cancel their subscriptions:[11]

- "Cerebral.com will NOT let you unsubscribe from their plans after you've signed up, so you'll end paying them forever, or you'll have to cancel the debit/credit card you signed up with. I've contacted them FOUR times 5-7 days before my subscription was going to renew and asked to cancel my plan. I've heard NOTHING from them so had to go through the great hassle of canceling the card I signed up with. It was a total pain to do this.."

- "I tried Cerebral for a time and was able to cancel successfully, but they didn't make it easy. I had to submit a request on their site, wait for someone to email me for details, explain why I wanted to cancel, and then confirm yet again that I wanted to cancel."

- "There's no way to cancel within the app. They also straight up don't answer their cancellation email and you have to fill out a whole form for it to even go through. And the form has be approved after you fill it out."

77.     According to consumers' first-hand accounts, Cerebral utilized a multi-step cancellation process, contrary to the simplistic policy described during the sign-up process, to frustrate a consumer's

---

[11] *See* https://www.reddit.com/r/ADHD/comments/t599gn/dont_sign_up_for_cerebralcom/.

PLAINTIFFS' CLASS ACTION COMPLAINT

ability to deactivate their account prior to an impending billing cycle. Cerebral's cancellation policy prior to June 2, 2022 was the antithesis of easy-to-use, timely and cost-effective.

78.     Upon information and belief, Cerebral amended its cancellation policy on or around June 2, 2022 to ostensibly provide consumers the ability to cancel their subscription by simply clicking "Cancel Subscription" in their Cerebral account. Such a cancellation feature was notably lacking in the Cerebral consumer experience prior to June 2, 2022. While it remains to be seen how effective this change will be going forward, it dose nothing to remedy the harm caused by the company's past deceptive conduct.

### D.     Cerebral Is Aware of the Deceptiveness of its Automatic Renewal Scheme and Difficult Cancellation Process

79.     In continuing to carry out its fraudulent billing and marketing tactics, Cerebral has ignored numerous glaring red flags demonstrating that consumers are being misled, including abnormally high complaint rates.

#### 1.   <u>Cerebral Has Received Hundreds of Complaints Regarding the Deceptiveness of its Scheme</u>

80.     Through the Better Business Bureau ("BBB"), Cerebral has received more than 163 customer reviews, and has a rating of 1.06 out of 5 stars. There have been 378 customer complaints closed within the last 3 years.

81.     The complaints on the BBB website echo the Plaintiffs' experiences, as consumers complain that they were induced to pay for a subscription that did not provide the services expected and which was extremely difficult to cancel, resulting in consumers paying for subscription services they did not want. Like Plaintiffs, other Cerebral customers have expressed similar outrage about Cerebral's predatory scheme and difficult cancellation process, including in the following complaints posted on the BBB's website: [12]

---

[12]     https://www.bbb.org/us/ca/walnut/profile/counseling/cerebral-1216-1532400/customer-reviews; https://www.bbb.org/us/or/portland/profile/mental-health-services/cerebral-inc-1296-1000111149/complaints.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



01/18/2022

Cancelled membership in due to counselor unavailability, continued to be charged, refund not issued for September, October, November 2021, amount $807.00. Multiple emails, phone calls and social media outreach - did everything I could to get their attention.

August K
★☆☆☆☆

05/17/2022

Charged me without explanation and without providing a service. Refuse to issue refunds, provided a cancellation form with no accurate answers for me to be able to fill in to cancel the "Subscription" Pure fraud



Emily D
★☆☆☆☆

05/16/2022

I wish I could give 0 stars. Signed up and paid for the therapy and medication subscription just to be told AFTER I paid that they don't have enough therapists available to get me one. I immediately canceled my membership and emailed them for a refund. They sent me a form to fill out to cancel my membership but said nothing about the refund. I again demanded a refund since I got none of the service they provided. After my account was cancelled and I emailed them a 2nd time asking for a refund they responded and said they found me a therapist, I said that's not what I asked for, I asked for a refund since I was irritated at that point of how horrible they were to customers, and I had already cancelled my account and told them I didn't want their services anymore. Still no response, still no refund. They're scam artists.

- 18 -

PLAINTIFFS' CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



**Gretchen H**
⭐☆☆☆☆

05/06/2022

Unfortunately you have put in credit card information before scheduling an appointment. When you get to the place to schedule an appointment it says "no availability" but they still charge your credit card. I asked for a full refund based on their inability to let me schedule an appointment and they only gave me a 30% refund. I received no services and was scammed out of some money. Highly recommend no one use this company.



**Alexis S**
⭐☆☆☆☆

04/18/2022

I was given misleading information regarding pricing multiple times, I eventually canceled and did not use my services then I was charged again for another month. While I'm still paying for medication that has also been canceled. I retained the cancelation email as well. Originally I did both the medication and therapy plan, I switched to therapy only under the guidance of my care team because I needed a plan that worked better for me financially. I was told that if I switched to therapy only and did two appointments instead of four that it would be half of the price. I was charged full price and when I inquired about this a second time I was told I could only get a discount for 33%, which I still did not receive. I've reached out to cerebral support for a refund and was told I did not qualify. I've canceled my services and I'm still paying for medication and therapy without having any appointments or prescription.

PLAINTIFFS' CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



**Ashley T**
⭐☆☆☆☆

04/14/2022

this is a disgusting company preying on people who have mental health issues. I have emailed multiple times to cancel my account and can't get through anyone on the phone. They have repeatedly charged my card for services that were NOT used. I had to cancel my credit card and file a dispute to get my money back - and we are not talking about arbitrary funds. $325 a Month is being charge on my card with no action for refunds or confirmation of cancellation. I am disgusted and would urge anyone and everyone to stay far far far away from this company and their predatory claims.



**Amalia B**
⭐☆☆☆☆

04/01/2022

BEWARE!!!! Please do not sign up for this service! They claim to help people with mental health but they are just looking to take your money. Upon signing up they charged my card immediately without using any services. It says they accepted my insurance but after multiple failed attempts to input my insurance (even tho all the info was correct) the site kept giving me an error message. Also they didn't have any available appointments for weeks in advance. All communication is through email and painstakingly slow with auto responses and no details. After realizing this I wanted to cancel but they make it nearly impossible to do so. After multiple emails of poor communication on their part and with no explanation refunded me $23.70 of a $79.00 charge. Keep in mind I literally did not use any of their services. They later explained this is a "strict policy" they have. So your policy is to take peoples money without them receiving any services?? This company is pure GREED. They do not want to help people with mental health problems they only want to take your money. This is pathetic to take advantage of vulnerable people in their time of need. Please don't make the same mistake and join this site. Save yourself the trouble.



05/12/2022

The company frequently had tech issues and I was unable to maintain contact with my counselor and prescriber. When I did, the interaction was rushed. I ended up only having a 5 minute talk with my counselor the entire time I was signed up. It was also impossible to set follow-up appointments through their site. You had to reach out to their support team directly who would assign you a time that may not be convenient for your schedule. Because of this, both my husband and I decided to cancel our ********** *********** *********** was done well in advance to avoid a charge during the next billing cycle, but we were both charged anyway. I reached out to get a refund as soon as I noticed and again after another month had gone by. I was told someone would get in touch, but no one has corrected the issue. The only response I have gotten has been repeated automates emails.

04/28/2022

I subscribed to ******** in January. I tried to schedule an appointment in February but the cite wouldn't let me but still took ******* so I had to reschedule for March in which they took another payment of $85.00 . I was unable to have my first session in March because it was canceled a couple days before my appointment date. Afterwards I emailed the company to cancel my subscription because I began to think it was a scam. Today, I ****** onto my mobile banking app to see that they have taken another ******* They have taken a total of ******* over the last few months and I've never ****** a therapist or ***********

82.     Scores of similar complaints on Trustpilot, Reddit, and Twitter have put Cerebral on further notice that its customers are unwillingly being charged for monthly subscription fees for services that they wish and have attempted to cancel. Out of the 3,674 reviews on Trustpilot, 26% of customers rate Cerebral as "poor" or "bad." A sample of these consumer complaints are contained below:

Posted by u/NotGoing2EndWell 3 months ago

**732**

## Don't sign up for Cerebral.com!

Tips/Suggestions

Cerebral .com will NOT let you unsubscribe from their plans after you've signed up, so you'll end paying them forever, or you'll have to cancel the debit/credit card you signed up with.

I've contacted them FOUR times 5-7 days before my subscription was going to renew and asked to cancel my plan. I've heard NOTHING from them so had to go through the great hassle of cancelling the card I signed up with. It was a total pain to do this.

If you look at Cerebral's Better Business Bureau page, you'll see there are many others who've experienced the same.

💬 172 Comments     ↗ Share     🔖 Save     👁 Hide     🏳 Report                          99% Upvoted

13

---

[13] https://www.reddit.com/r/ADHD/comments/t599gn/dont_sign_up_for_cerebralcom/.

PLAINTIFFS' CLASS ACTION COMPLAINT

1

2

3

4

5

6

7

8

9

10

**JS** jen schaffroth
1 review   ◎ US

★☆☆☆☆                                              4 days ago

**Absolute scam!**

Absolute scam!
After filling out the initial online survey and subscribing to the service, I was told
that I am not a candidate for telemedicine. The system prompted me to a link
where I could request a refund but that link is telling me they don't provide
refunds! Who charges for a service that they can't provide?! After a week of back
and forth (seriously more than 20 emails) they are offering me a $9 refund.
Seriously? If I ordered a pair of shoes off the internet but they didn't have my size
they wouldn't give me a partial credit because they had the shoes in a different
size than I needed.
This company is preying on people with mental illness and stealing their money.
BEWARE!!

[14]

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

[14] cerebral.com Reviews | Read Customer Service Reviews of cerebral.com (trustpilot.com).

PLAINTIFFS' CLASS ACTION COMPLAINT



⭐☆☆☆☆    ✓ Invited                                6 days ago

**deceptive and now trying to defaud**

So Issue #1:

I was told that I would get an appointment explicitly with a prescriber. I was asked to choose options from a list of meds that included included Adderall. Then I was charged a fee up front and after that I was told (at the start of my appointment) that it was against policy to fill Adderall. Not a single flag or warning whatsoever when I chose Adderall from a list of meds. This is unethical and deceptive at best.

THEN the real problems began. In order to get my subscription canceled I could not do so anywhere on my account online... I had to search before finding out I had to email asking specifically. Then I get an email saying I had to fill something out (yet another road block) and then get a message saying it would be several days. A week later nothing has been processed and I was still listed as due to be charged $325 in June for a continued subscription.

So... here I am having filled it out again and sent more letters forwarding and documenting the details for my bank. Very likely if I don't hear from them I will have to cancel my credit cards to prevent the charge and get new ones over this mess.

So yeah... deceptive, unethical business tactics followed by what is looking to be outright fraud.

[15]

**Amanda Finley Digs All The Things**
@rubyslippahs                                        ...

I've been trying for WEEKS to cancel my @cerebral subscription. WAS ON HOLD WITH THEM when they charged me $89. WAS STILL LIVING IN  A TENT AT THE TIME. They are refusing to refund me because I didn't contact them soon enough. They make cancellation impossible to find on the app.

10:50 AM · May 27, 2022 · Twitter for Android

[16]

---

[15] cerebral.com Reviews | Read Customer Service Reviews of cerebral.com (trustpilot.com).
[16] https://twitter.com/rubyslippahs/status/1530199685025210368.

PLAINTIFFS' CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



**Jose TVI Class**
1 review   ⊙ US

★☆☆☆☆                                                           May 30, 2022

**Cerebral is con artist trash disguised as Psychology**

Cerebral is con artist trash. Research how they are being sued and how frustrating it is to cancel an account. I was suffering from insomnia and they assumed I was stressed out. I didn't have anxiety at all, I figured out my insomnia issues on my own.

All Cerebral offered me were pills and no real solutions to my insomnia. I refused to take any of the pills they offered and my psychologist was rude to me because I didn't take them. He said, "pills are all I have to offer you".

After my disappointing experience, I immediately wanted to cancel my account but there are no options to cancel on their website or their app. I had to google how to cancel the account. After I emailed to cancel my account, they contacted me back and said sorry to see you go.

2 days later they charged my account again and my account is still active. Now I'm contacting my credit card and disputing every charge. Because they are refusing to refund me my money and cancel my account.

Do not support this company. Do not become another victim of their scam services. They are trash.

17

 Fearless-Control-882 · 1 mo. ago

I left this service in January for so many reasons and just now got an email that they're going to charge me $20.00 because I owe them for services. No invoice, no breakdown, nothing. The best part is you cannot access your old invoices after you cancel either. SCAM OF A COMPANY. I literally cancelled it months ago and that was a pain in my ass then too because I had to basically fight them to cancel.

⬆ 3 ⬇  💬 Reply  Share  Report  Save  Follow

18

---



[17] cerebral.com Reviews | Read Customer Service Reviews of cerebral.com (trustpilot.com).

[18]https://www.reddit.com/r/cerebralfraud/comments/u9x8ud/if_you_need_a_100_refund_threaten_leg al/.

PLAINTIFFS' CLASS ACTION COMPLAINT



**Timothy Mendez**
@Trimnation1994

@cerebral can someone please contact me about this refund we should have gotten. You guys have done us so dirty. You made me lose my job, you charged us and state "there's no way to refund us" the $254.50 you guys have taken. Including $175.50 after we cancelled?

11:21 PM · May 26, 2022 · Twitter Web App

[19]



**Jared Price**
1 review   ◉ US



Updated 5 days ago

### I wish I could give a lower rating.

This company gave me so much trouble while using their service. I never spoke to a single counselor while paying for their service. I would schedule appointments and they would get cancelled the day of or while I'm waiting for the session to begin. All messages received felt scripted or automated. The medical prescriber talks to you for about 4 minutes before writing you some random medication and charges you 75 dollars. When asking customer service about the issues I have been happening, they said there was nothing they could do because there was no record of these things happening and there was no record of me calling support even though I called them a dozen times about this issue. I had to call and write them for 2 weeks before they claimed they would give me a 30% refund. That also was a lie and I never received my refund. This company does not care about your mental health and is primarily profit driven. If you enjoy wasting time and money cerebral is perfect for you.

EDIT: There is nothing that cerebral can do to get me to change my review. It was literally the worst introduction to mental health treatment I could have possibly had.

[20]

83.    Thus, after receiving thousands of complaints from customers who were unwillingly

---

[19] https://twitter.com/Trimnation1994/status/1530026383019229203 (last visited June 7, 2022).

[20] cerebral.com Reviews | Read Customer Service Reviews of cerebral.com | 2 of 41 (trustpilot.com).

PLAINTIFFS' CLASS ACTION COMPLAINT

enrolled in Cerebral's auto-renewing subscription—paying for services never rendered—Cerebral knew or should have known that its cancellation process was unnecessarily difficult, trapping customers into paying for a subscription that they did not desire and wished to cancel. Some customers report having to resort to cancelling their credit cards or disputing charges with their banks to avoid unwanted charges after cancelling their subscription.

84.    Yet Cerebral has continued its marketing ploy, disregarding the fact that thousands of customers are paying for services never rendered and are unable to cancel and thus charged for non-refundable memberships.

### 2. Cerebral Acknowledges the Elements of its Enrollment Scam in its Communications to Customers

85.    Cerebral's responses to customers on consumer sites such as BBB and Trustpilot show that Cerebral was well aware of its scheme, providing the same canned response to consumers acknowledging the "less-than satisfactory care" and stating that, as a mental health company, Cerebral is "wholeheartedly focused on improving the well-being of thousands of individuals who may not have had access to, or the means to afford, quality mental health care." It invites customers to reach out to the Cerebral Team to "hopefully help repair your trust in Cerebral."

86.    Cerebral provided this response on multiple customer reviews regarding the difficult cancellation process. Cerebral is also aware that customers are facing difficulties in contacting customer care because Cerebral's customer service is virtually non-existent. [21]

87.    Cerebral also recognizes that customers experience "difficulty cancelling" and "difficulty utilizing the service," inviting customers to separately reach out to Cerebral Customer Support to further discuss their disputes.[22]

---

[21] *See, e.g.*, https://www.bbb.org/us/ca/walnut/profile/counseling/cerebral-1216-1532400/customer-reviews.

[22] *See, e.g.* cerebral.com Reviews | Read Customer Service Reviews of cerebral.com | 2 of 41 (trustpilot.com).

### 3.   Cerebral Knows its Claims of Available Trained Professionals is False and Misleading

88.     Similarly, Cerebral is aware that it is unable to provide available trained professionals for subscribers within a reasonable period of time. Despite advertising that Cerebral subscribers will have "regular" video phone sessions with an assigned care counselor and will be able to see a prescriber in "typically less than 7 days," Cerebral is aware that many subscribers face difficulties in scheduling appointments due to lack of availability.

89.     The Cerebral Team has acknowledged—and responded to—consumer complaints that when they go to schedule an appointment, Cerebral tells them there is "no availability" of providers in their area, yet their credit cards are charged anyway.[23]

90.     One Cerebral subscriber, Katie Mac, took to TikTok in December 2021 to relay her experience of having to enter her credit card information before choosing a therapist only to learn that— after she had already provided her credit card information and was locked into a subscription—only two therapists were available in her area, neither of whom met her needs. This was a far cry from the "hundreds" of options Cerebral advertised, which induced Ms. Mac into subscribing. It was not until having gone back and forth with Cerebral *four* times before Cerebral even offered Ms. Mac a paltry 30 percent refund for a service she never used that did not provide a treatment that suited her needs.[24]

91.     Despite its knowledge that it cannot live up to its public representations about available access to care providers, Cerebral is steadfast in its deceptive marketing and enrollment processes, falsely advertising the availability of trained professionals and preventing customers from discovering the truth until after they are locked into a nonrefundable subscription.

### 4.   Cerebral Only Provides Refunds to Customers Who Threaten Legal Action

92.     When Cerebral does provide refunds, it typically only does so after a customer threatens

---

[23] *See, e.g.* https://www.bbb.org/us/ca/walnut/profile/counseling/cerebral-1216-1532400/customer-reviews.

[24] Carly Stern, *Woman slams Simone Biles-backed therapy app Cerebral, accusing the company of 'scamming' users and 'preying' on those with mental illness by pre-charging for services it doesn't provide*, Daily Mail (Jan. 26, 2022), available: Woman slams therapy app Cerebral, accusing them of 'scamming' people | Daily Mail Online.

legal action or publicly complains.

93.     Internal documents reveal Cerebral's strict protocol for refunds, deceptively designed to make cancelling the subscription nearly impossible. As reported by *Forbes*, Cerebral's internal refund policy lays out 12 specific scenarios when the company will grant a full refund, including threats of legal action.[25]

94.     The policy further separates out customers who "had the ability to schedule with a clinician within a reasonable time frame" and those were unable to schedule "as a result of clinician capacity issues." However, the "reasonable time frame" is undefined in either Cerebral's terms and conditions or its billing policy.

95.     Cerebral's acting CEO and former chief medical officer and psychiatrist, David Mou, denied any awareness about the timelines of Cerebral's internal refund policies, and said that Cerebral does not make these policies public to consumers because "communicating specific thresholds externally could cause greater confusion."

96.     The *Forbes* article details the specific experience of a Cerebral subscriber, "Elizabeth," who unknowingly agreed to an "upgraded" charge for therapy and had contacted Cerebral to request a refund for the two separate charges on her bill. The Cerebral representative told Elizabeth via email that "since we bill using a subscription model, we are unable to reverse charges regardless of whether our services have been utilized." Less than an hour after Elizabeth detailed this interaction on Twitter, a representative from the corporate office at Cerebral left a voicemail on her phone regarding her tweet, blaming Elizabeth for not "reading[ing] the terms and conditions when you sign up for things" claiming that it is not Cerebral's "fault if [she chose] not to do that." The voicemail ended with the Cerebral representative admonishing Elizabeth to "keep your comments to yourself." It was only after Elizabeth sent a follow up email to Cerebral threatening to report the company to her state attorney general that Elizabeth was notified she would be receiving a full refund.[26]

---

[25] Katie Jennings, *Getting a Refund From Mental Health Startup Cerebral Can Take Its Own Toll on Customers*, FORBES (Feb. 18, 2022), available: Getting A Refund From Mental Health Startup Cerebral Can Take Its Own Toll On Customers (forbes.com).

[26] *Id.*

97.     Protecting its own reputation appears to be a priority in Cerebral granting refunds. The internal refund policy says that full refunds will also be granted if a customer "threatens leaving a negative review" on websites, including Trustpilot, the Better Business Bureau or Reviews.io.

98.     The opaque customer service policies are drawing ire from Cerebral staff as well as customers. A Cerebral therapist told *Forbes* that "the main thing that a lot of employees are asking for is just transparency…From what all of us are being told, our company is doing well and we're experiencing extreme growth. Why not make an effort to do right by your clinical staff and do right by the patients that we're there to serve?"[27]

## **CLASS ACTION ALLEGATIONS**

99.     This action is brought as a class action pursuant to Rule 23(a) and 23(b)(2), (b)(3) and (c)(4) of the Federal Rules of Civil Procedure. Plaintiffs seek certification of the following Class:

> Nationwide Class: All persons in the United States who purchased a Cerebral subscription via the Cerebral website or mobile app and who (i) were charged by Cerebral for a subscription and (ii) did not receive a full refund or chargeback of all Cerebral subscription charges.

In addition and/or in the alternative, Plaintiffs seek certification of the following State class:

> California Class: All persons in California who purchased a Cerebral subscription via the Cerebral website or mobile app and who (i) were charged by Cerebral for a subscription and (ii) did not receive a full refund or chargeback of all Cerebral subscription charges.

> Washington Class: All persons in Washington who purchased a Cerebral subscription via the Cerebral website or mobile app and who (i) were charged by Cerebral for a subscription and (ii) did not receive a full refund or chargeback of all Cerebral subscription charges.

100.    Excluded from the Classes is Cerebral, its affiliates, employees, officers and directors, and the Judge(s) assigned to this case.

101.    Plaintiffs reserve the right to modify, change, or expand the class definitions if discovery and/or further investigation reveal that the class definitions should be expanded or otherwise modified.

---

[27] *Id.*

102.    **Numerosity**:  The Class is so numerous that joinder of all members is impracticable. While the exact number and identities of individual members of the Class is unknown at this time, such information being in the sole possession of Cerebral and obtainable by Plaintiffs only through the discovery process, Plaintiffs believe, and on that basis allege, that the Class encompasses at least tens of thousands of individuals whose identities can be readily ascertained from Cerebral's records.

103.    The Class is ascertainable because its members can be readily identified using data and information kept by Cerebral in the usual course of business and within its control. Plaintiff anticipates providing appropriate notice to each Class member, in compliance with all applicable federal rules.

104.    **Existence/Predominance of Common Questions of Fact and Law**: Common questions of law and fact exist as to all members of the Class.  These questions predominate over the questions affecting individual Class members.  These common legal and factual questions include, but are not limited to:

a.     Whether Defendant's representations and/or omissions are fraudulent;

b.     Whether Defendant's conduct violates the applicable state or territorial consumer protection statutes;

c.     Whether Defendant was unjustly enriched as a result of its conduct;

d.     Whether Class Members have been injured by Defendant's conduct;

e.     Whether, and to what extent, equitable relief and/or other relief should be imposed on Defendant, and, if so, the nature of such relief; and

f.     The extent of classwide injury and the measure of damages for those injuries.

105.    **Typicality**:  Plaintiffs' claims are typical of the claims of the Class since each of the Plaintiffs were subject to the same or similar marketing, enrollment and billing practices engineered by Defendant, as was each member of the Class. Plaintiffs and Class members were injured in the same manner by Cerebral's uniform course of conduct alleged herein.  Plaintiffs and all Class members have the same claims against Cerebral relating to the conduct alleged herein, and the same events giving rise to Plaintiffs' claims for relief are identical to those giving rise to the claims of all Class Members. Plaintiffs and all Class members sustained monetary and economic injuries arising out of Defendant's

conduct. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all absent Class Members.

106.   **Adequacy**:  Plaintiffs are adequate representatives for the Class because their interests do not conflict with the interests of the Class that they seek to represent. Plaintiffs have retained counsel competent and highly experienced in complex class action litigation—including consumer fraud class action cases—and they intend to prosecute this action vigorously.  The interests of the Class will be fairly and adequately protected by Plaintiffs and their counsel.

107.   **Superiority**:  A class action is superior to all other available means of fair and efficient adjudication of the claims of Plaintiffs and members of the Class. The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Cerebral's conduct. It would be virtually impossible for members of the Class to effectively individually redress the wrongs done to them by Cerebral. Even if Class members could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, an economy of scale, and comprehensive supervision by a single court. Upon information and belief, members of the Class can be readily identified and notified.

108.   Cerebral has acted, and/or has refused to act, on grounds generally applicable to the Class, thereby making appropriate final equitable and public injunctive relief with respect to the Class as a whole.

109.   Further, the following issues are also appropriately resolved on a class-wide basis under Fed. R. Civ. P. 23(c)(4):

a.   Whether Defendant's representations and/or omissions are fraudulent;

b.   Whether Defendant's conduct violates the applicable state or territorial consumer protection statutes;

PLAINTIFFS' CLASS ACTION COMPLAINT

c.    Whether Defendant was unjustly enriched as a result of its conduct;

d.    Whether Class Members have been injured by Defendant's conduct; and

e.    Whether, and to what extent, equitable relief and/or other relief should be imposed on Defendant and, if so, the nature of such relief.

110.    Accordingly, this action satisfies the requirements set forth under Fed. R. Civ. P. 23(a), 23(b), and 23(c)(4).

## CAUSES OF ACTION

111.    Plaintiffs bring each of the following claims for relief pursuant to California law because Cerebral's Terms & Conditions specify that the Terms of Use "shall be governed in all respects by the internal substantive laws of the State of California, without regard to its conflict of laws principles."[28] Should the Court not apply California law to Plaintiffs' claims pursuant to this provision, Plaintiffs allege, in the alternative, that the common law claims should be governed by the Plaintiffs' respective states of residence.

## COUNT I

### CALIFORNIA FALSE ADVERTISING LAW–VIOLATION OF THE CALIFORNIA AUTOMATIC RENEWAL LAW

112.    Plaintiffs incorporate by reference all preceding and subsequent paragraphs.

113.    Plaintiffs bring this claim on their own behalf and on behalf of the Classes.

114.    As part of California's False Advertising Law, the California Automatic Renewal Law, CAL. BUS. & PROF. CODE § 17600 *et seq.* became effective on December 1, 2010.

115.    CAL. BUS. & PROF. CODE § 17600, *et seq.*, California's Automatic Purchase Renewal Statute, declares unlawful "the practice of ongoing charging of consumer credit or debit cards  or  third-party payment accounts without the consumers' explicit consent for ongoing shipments of a product or ongoing deliveries of service." Cerebral's conduct as alleged in this Complaint violates CAL. BUS. & PROF. CODE § 17602 because each of the following practices Cerebral has engaged in is an independent violation of the Automatic Purchase Renewal Statute:

---

[28] https://cerebral.com/terms-and-conditions.

a.  Cerebral failed to present the terms of its automatic renewal or continuous service offer in a clear and conspicuous manner before fulfilling the subscription and in visual proximity to the request for consent to the offer, as required by CAL. BUS. & PROF. CODE §§ 17602(a)(1);

b.  Cerebral failed to provide a toll-free telephone number, electronic mail address, a postal address or another cost-effective, timely, and easy-to-use mechanism for cancellation described in CAL. BUS. & PROF. CODE §§ 17602(a)(3), as required by CAL. BUS. & PROF. CODE §§ 17602(b);

c.  Cerebral failed to allow Plaintiffs and the Classes to terminate the automatic renewal or continuous service exclusively online, as required by CAL. BUS. & PROF. CODE §§ 17602(c).

116.  Plaintiffs and members of the Classes would not have subscribed if they had known the truth and have suffered injury in fact and lost money as a result of Defendant's violations of the Automatic Purchase Renewal Statute.

117.  As a result of Defendant's misconduct, Plaintiffs and the Classes have suffered injury that cannot be remedied without restitution of all amounts that Cerebral charged or caused to be charged to Plaintiffs' and the Class members' credit cards, debit cards, or third-party payment accounts during the applicable statute of limitations and continuing until Cerebral's statutory violations cease.  Pursuant to CAL. BUS. & PROF. CODE § 17535, this Court may award such restitution to Plaintiffs and the Classes.

118.  As a result of Defendant's misconduct, pursuant to CAL. BUS. & PROF. CODE § 17535, Plaintiffs and the Classes are entitled to an injunction (a) enjoining Cerebral from making automatic renewal offers that do not comply with California law, (b) from making charges to credit cards, debit cards, or third-party payment accounts without prior affirmative consent to an agreement containing "clear and conspicuous" disclosures of automatic renewal or continuous service offer terms, (c) enjoining Cerebral from making automatic renewal offers that fail to provide an acknowledgment that includes "clear and conspicuous" disclosure of automatic renewal or continuous service offer terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer, and (d) enjoining Cerebral from making automatic renewal offers that fail to provide an online, easy-to-use mechanism for cancellation.

119.     Pursuant to CAL. BUS. & PROF. CODE § 17535, this Court has the power to award such equitable relief, including but not limited to, an order declaring Defendant's auto-renewal practices to be unlawful, an order enjoining Defendant from engaging in any such further unlawful conduct, and an order directing Defendant to refund to the Plaintiffs and the Classes all monthly fees wrongfully assessed and/or collected.

## COUNT II

### CALIFORNIA FALSE ADVERTISING LAW–DECEPTIVE PRACTICES

120.     Plaintiffs incorporate by reference all preceding and subsequent paragraphs.

121.     Plaintiffs bring this claim on their own behalf and on behalf of the Classes.

122.     California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.*, makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state, . . . in any advertising device . . . or in any other manner or means whatever, including over the Internet, any statement, concerning . . . personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

123.     Defendant's conduct as alleged herein violates CAL. BUS. & PROF. CODE § 17500 by intentionally making and disseminating statements to consumers in California and the general public concerning Defendant's products and services, as well as circumstances and facts connected to such products and services, which are untrue and misleading on their face and by omission, and which are known (or which by the exercise of reasonable care should be known) by Defendant to be untrue or misleading. Defendant has also intentionally made or disseminated such untrue or misleading statements and material omissions to consumers and to the public as part of a plan or scheme with intent not to sell those services as advertised.

124.     Defendants violated CAL. BUS. & PROF. CODE § 17500 by, *inter alia*:

a.     Engaging in a marketing and billing program that is likely to mislead a reasonable consumer acting reasonably under the circumstances;

b.     Making false promises to customers concerning the availability of appointments they will receive as Cerebral customers, and leading them to believe that they will be able to

- 34 -

easily book appointments, and then continuing to charge customers and refusing to refund customers even when they are unable to book the appointments Cerebral is charging them for;

c.      Using a billing mechanism that automatically charges customers without their awareness or consent and failing to provide adequate disclosures regarding the charges that will be imposed;

d.      Omitting material information in order to induce customers to subscribe; and

e.      Making it difficult for customers to cancel their subscriptions, even as Cerebral fails to provide the bargained for service.

125.    Defendant's actions in violation of § 17500, as described herein, were false and misleading such that the general public is and was likely to be deceived.

126.    Plaintiffs and the members of the Classes were deceived by and relied on Defendant's statements and omissions to their detriment when they subscribed to Cerebral and were charged even though Cerebral was unable to provide the promised appointments, and automatically enrolled into Cerebral's auto-recurring subscription, and there is a strong probability that other consumers and members of the public were also or are likely to be deceived as well. Any reasonable consumer would be misled by Defendant's false and misleading statements and material omissions. Plaintiffs and other members of the Classes did not learn of the difficulties in scheduling appointments with Cerebral or Defendant's cancellation and automatic payment policies until after they had already signed up and were forced into paying for Defendant's service.

127.    Plaintiff and the Class lost money or property as a result of Defendant's violations because they would not have subscribed to Cerebral or been charged for monthly subscriptions if the true facts about Cerebral's services, appointment availably, and monthly subscriptions were known to them.

128.    As a result of Defendant's misconduct pursuant to CAL. BUS. & PROF. CODE § 17500, Plaintiffs and the Classes are entitled to individual, representative, and public injunctive relief and any other necessary orders or judgments that will prevent Defendant from continuing with their false and deceptive advertisements and omissions; restitution that will restore the full amount of their money or property; disgorgement of Defendant's relevant profits and proceeds; and an award of costs and

reasonable attorneys' fees. To the extent any of these remedies are equitable, Plaintiffs seek them in the alternative to any adequate remedy at law they may have.

## <u>COUNT III</u>

### CALIFORNIA UNFAIR COMPETITION LAW–VIOLATION OF THE CALIFORNIA AUTOMATIC RENEWAL LAW AND DECEPTIVE PRACTICES

129.    Plaintiffs incorporate by reference all preceding and subsequent paragraphs.

130.    Plaintiffs bring this claim on their own behalf and on behalf of the Classes.

131.    CAL. BUS. & PROF CODE § 17200, *et seq.* (the "UCL") prohibits acts of "unfair competition," including any unlawful and unfair business acts or practices.

132.    Under the "unlawful" prong of the UCL, a violation of another law is treated as unfair competition and is independently actionable.

133.    Defendant committed unlawful practices because it violated CAL. BUS. & PROF. CODE § 17600, et seq., California's Automatic Purchase Renewal Statute, which declares unlawful "the practice of ongoing charging of consumer credit or debit cards or third-party payment accounts without the consumers' explicit consent for ongoing shipments of a product or ongoing deliveries of service." Defendant's conduct as alleged in this Complaint violates CAL. BUS. & PROF. CODE § 17602 because each of the following practices is an independent violation of the Automatic Purchase Renewal Statute:

a.    Cerebral failed to present the terms of its automatic renewal or continuous service offer in a clear and conspicuous manner before fulfilling the subscription and in visual proximity to the request for consent to the offer, as required by Cal. Bus. & Prof. Code §§ 17602(a)(1);

b.    Cerebral failed to provide a toll-free telephone number, electronic mail address, a postal address or another cost-effective, timely, and easy-to-use mechanism for cancellation described in Cal. Bus. & Prof. Code §§ 17602(a)(3), as required by Cal. Bus. & Prof. Code §§ 17602(b);

c.    Cerebral failed to allow Plaintiffs and the Classes to terminate the automatic renewal or continuous service exclusively online, as required by Cal. Bus. & Prof. Code §§ 17602(c).

134.    Under the "unfair" prong of the UCL, a business practice is unfair if that practice offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.

135.   Defendant committed unfair acts and practices by, *inter alia*:

 a.   Engaging in a marketing and billing program that is likely to mislead a reasonable consumer acting reasonably under the circumstances;

 b.   Making false promises to customers concerning the availability of appointments they will receive as Cerebral customers, and leading them to believe that they will be able to easily book appointments, and then continuing to charge customers and refusing to refund customers even when they are unable to actually book the appointments Cerebral is charging them for;

 c.   Using a billing mechanism that automatically charges customers without their awareness or consent and failing to provide adequate disclosures regarding the charges that will be imposed;

 d.   Omitting material information in order to induce customers into subscribe; and

 e.   Making it difficult for customers to cancel their subscriptions, even as Cerebral fails to provide the bargained for service.

136.   Plaintiffs and the Classes reserve the right to allege other violations of law which constitute unlawful, unfair, or fraudulent business acts or practices as Defendant's conduct is ongoing and continues to this date.

137.   Defendant's acts and omissions as alleged herein violate obligations imposed by statute, are substantially injurious to consumers, offend public policy, and are immoral, unethical, oppressive and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct.

138.   There were reasonably available alternatives to further Cerebral's legitimate business interests, other than the conduct described herein.

139.   Defendant's acts, omissions, nondisclosures, and misleading statements as alleged herein were and are false, misleading, and/or likely to deceive the consuming public.

140.   As a result of Defendant's unlawful and unfair business practices, Plaintiffs and Class members have suffered an injury in fact and have lost money in an amount to be determined at the trial of this action.

141.   Pursuant to CAL. BUS. & PROF CODE §17203 Plaintiffs and the other Class members are entitled to an order: (1) requiring Cerebral to make restitution to Plaintiffs and the Class members; (2)

enjoining Defendants from charging Plaintiffs' and Class members' credit cards, debit cards, and/or third party payment accounts until such time as Cerebral obtains the consumer's affirmative consent to an agreement that contains clear and conspicuous disclosures of all automatic renewal or continuous service offer terms; and (3) enjoining Cerebral from making automatic renewal or continuous service offers that do not comply with the California Automatic Renewal Law. To the extent any of these remedies are equitable, Plaintiffs seek them in the alternative to any adequate remedy at law they may have.

## COUNT IV

### CALIFORNIA CONSUMERS LEGAL REMEDIES ACT–VIOLATION OF THE CALIFORNIA AUTOMATIC RENEWAL LAW

142.    Plaintiffs incorporate by reference all preceding and subsequent paragraphs.

143.    Plaintiffs bring this claim on their own behalf and on behalf of the Class members.

144.    The California Consumers Legal Remedies Act (the "CLRA"), CAL. CIV. CODE § 1770(a)(14) , prohibits "[r]epresenting that a transaction confers or involves rights, remedies, or obligations that it does not have or involve, or that are prohibited by law."

145.    Defendant violated, and continue to violate the CLRA by representing that Cerebral has rights and remedies that it does not have, specifically that it has the right to charge Plaintiffs and the Class members' payment methods without first making the statutorily required disclosures under California's Automatic Purchase Renewal Statute and obtaining their affirmative consent to the agreement containing the automatic renewal terms and continuous offer terms, and through other conduct described above, in violation of California's Automatic Purchase Renewal Statute. Cerebral does not have the legal right to charge for these subscriptions because at all relevant times, it was not in compliance with California's Automatic Purchase Renewal Statute.

146.    Plaintiffs and the Class members are "consumers" within the meaning of CAL. CIV. CODE § 1761(d) in that Plaintiffs and the Class members sought or acquired Defendant's services for personal, family, or household purposes.

147.    The therapy and other services offered through Defendant's mental health app constitute "services" within the meaning of CAL. CIV. CODE § 1761(a) and (b).

148.    Plaintiffs have standing to pursue these claims because they have suffered injury in fact and a loss of money and/or property as a result of the wrongful conduct alleged herein. Plaintiffs would not have subscribed to Cerebral's monthly subscriptions had they known the truth.

149.    The purchases by Plaintiffs and the Class members are "transactions" within the meaning of CAL. CIV. CODE § 1761(e)

150.    As a direct and proximate result of result of Defendant's violations of the CLRA, Plaintiffs and the Class members were wrongfully charged for subscriptions to Cerebral.

151.    Defendant's conduct alleged herein was undertaken by Defendant knowingly, willfully, and with oppression, fraud, and/or malice, within the meaning of CAL. CIV. CODE § 3294(c).

152.    Plaintiffs sent a CLRA notice on behalf of themselves and a Class of similarly situated individuals to Cerebral on June 8, 2022, providing the notice required by CAL. CIV. CODE § 1782. Accordingly, Plaintiffs seek only injunctive relief pursuant to this claim at this time. If Defendant does not cure the violations of the CLRA alleged herein within the 30 day cure period, Plaintiffs will amend their pleading to add a demand for damages.

153.    Plaintiffs further seek an order awarding costs of court and attorneys' fees pursuant to CAL. CIV. CODE 1780(d).

154.    Attached hereto as Exhibit "A" are CLRA venue declarations submitted pursuant to CAL. CIV. CODE 1780(d).

**COUNT V**

**CALIFORNIA CONSUMERS LEGAL REMEDIES ACT–DECEPTIVE PRACTICES**

155.    Plaintiffs incorporate by reference all preceding and subsequent paragraphs.

156.    Plaintiffs bring this claim on their own behalf and on behalf of the Nationwide Class.

157.    The CLRA, CAL. CIV. CODE § 1750, *et seq.*, prohibits "unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer."

158.    Plaintiffs and the Class members are "consumers" within the meaning of CAL. CIV. CODE § 1761(d) in that Plaintiffs and the Class members sought or acquired Defendant's services for personal, family, or household purposes.

159.    The therapy and other services offered through Defendant's mental health app constitute "services" within the meaning of CAL. CIV. CODE § 1761(a) and (b).

160.    Plaintiffs have standing to pursue these claims because they have suffered injury in fact and a loss of money and/or property as a result of the wrongful conduct alleged herein. Plaintiffs would not have subscribed to Cerebral's monthly subscriptions had they known the truth.

161.    The purchases by Plaintiffs and the Class members are "transactions" within the meaning of CAL. CIV. CODE § 1761(e)

162.    Defendant violated CAL. CIV. CODE § 1770, subdivisions (a)(5), (a)(9), (a)(14) and (a)(16) by, *inter alia*, representing that Cerebral's goods and services have certain characteristics that they do not have; advertising goods and services with the intent not to sell them as advertised; representing that a transaction confers or involves rights, remedies, or obligations that it does not have or involve, or that are prohibited by law; and representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not.

163.    As a direct and proximate result of result of Defendant's violations of the CLRA, Plaintiffs and the Class members were wrongfully charged fees for monthly subscriptions to Cerebral's app.

164.    Defendant's conduct alleged herein was undertaken by Defendant knowingly, willfully, and with oppression, fraud, and/or malice, within the meaning of CAL. CIV. CODE § 3294(c).

165.    Plaintiffs sent a CLRA notice on behalf of themselves and a Class of similarly situated individuals to Cerebral on June 8, 2022, providing the notice required by CAL. CIV. CODE § 1782. Accordingly, Plaintiffs seek only injunctive relief pursuant to this claim at this time. If Defendant does

not cure the violations of the CLRA alleged herein within the 30 day cure period, Plaintiffs will amend their pleading to add a demand for damages.

166.    Plaintiffs further seek an order awarding costs of court and attorneys' fees pursuant to CAL. CIV. CODE 1780(d).

167.    Attached hereto as Exhibit "A" are CLRA venue declarations submitted pursuant to CAL. CIV. CODE 1780(d).

## COUNT VI

### BREACH OF CONTRACT

168.    Plaintiffs incorporate by reference all preceding and subsequent paragraphs.

169.    Plaintiffs bring this claim individually and on behalf of the Classes.

170.    Plaintiffs and Defendant entered into contracts for the purchase of mental health and counseling services through the Cerebral app.

171.    Plaintiffs have fully performed all material covenants, conditions and obligations that they were required to perform by reason of their contracts, except to the extent waived, excused, or made impossible by Defendant's breaches of the contract.

172.    On the other hand, the Plaintiffs never agreed that Defendant could charge them and then not deliver the promised services, and then continue to charge them monthly. This term is not part of the parties' contracts with one another, and Defendant did not have the right to act as such under the terms of its agreements with Plaintiffs.

173.    Defendant's conduct frustrated the entire purpose of the contract and the reasons for why Plaintiffs contracted with Defendant in the first place, and materially breached its contracts with Plaintiffs, which had the direct and proximate effect of causing damages to Plaintiffs in an amount to be proven at trial, plus interest allowable under applicable law.

174.    Plaintiffs demand an award of any consequential damages, reasonable attorneys' fees and costs, and any other relief afforded under California law.

1

2

**COUNT VII**

**UNJUST ENRICHMENT/QUASI CONTRACT**

3     175.   Plaintiffs incorporate by reference all preceding and subsequent paragraphs.

4     176.   Plaintiffs bring this claim individually and on behalf of the Classes.

5     177.   This claim is pleaded in the alternative to Plaintiffs' contract claims.

6     178.   As the intended and expected result of its conscious wrongdoing, Defendant has profited

7  and benefited from the purchase of subscriptions by Plaintiffs and the Class that are devalued or

8  otherwise worth less due to unavailability of appointments and services. Defendant has also profited and

9  benefited from the subscription fees themselves and from continuing to charge consumers even when

10 they cannot use Cerebral's services, which Plaintiffs and Class members did not know when they

11 subscribed.

12     179.   Defendant has voluntarily accepted and retained these profits and benefits, with full

13 knowledge and awareness that, as a result of Defendant's misconduct alleged herein, Plaintiffs and the

14 Class were not receiving services of the quality, nature, fitness, or value that had been represented by

15 Defendant, and that a reasonable consumer would expect. Specifically, Plaintiffs and the Class members

16 expected that they would be able to use Cerebral's services and be able to cancel whenever they wanted,

17 while Defendant has instead been engaging in a money-grab, bait and switch ploy.

18     180.   Defendant has been unjustly enriched by its fraudulent, deceptive, unlawful, and unfair

19 conduct, and withholding of benefits and unearned monies from Plaintiffs and the Class, at the expense

20 of these parties.

21     181.   Equity and good conscience militate against permitting Defendant to retain these profits

22 and benefits.

23

**COUNT VIII**

24

**BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING**

25

26     182.   Plaintiffs repeat, reallege, and incorporate by reference each of the foregoing allegations

27 as though fully set forth herein.

28

- 42 -

183.    Plaintiffs bring this claim individually and on behalf of the Classes pursuant to California law.

184.    A covenant of good faith and fair dealing is implied in every contract and imposes upon each party a duty of good faith and fair dealing in its performance of the contract. Common law calls for substantial compliance with the spirit, not just the letter, of a contract in its performance. The duty to act in good faith and deal fairly requires adherence to commercial norms and prevents a contracting party from acting in contravention of the counterparty's objectively reasonable expectations arising from the agreement.

185.    Cerebral breached the covenant of good faith and fair dealing when it induced Class members to subscribe, charged them, failed to provide the promised services, and continued to charge Class members.

186.    All conditions required for Plaintiffs' and the Class members' performance under the agreement occurred.  Plaintiffs' and Class members' were uniformly and materially subject to Cerebral's conduct.

187.    As a direct and proximate result of Cerebral's breaches of the covenant of good faith and fair dealing, Plaintiffs and Class members have been damaged in an amount to be proven at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, hereby request that this Court enter an Order against Defendant providing the following:

A.    Certification of the proposed Classes, appointment of Plaintiffs and their counsel to represent the proposed Classes, and notice to the proposed Class to be paid for by Defendant;

B.    An order temporarily and permanently enjoining Defendant from continuing the unlawful, deceptive, fraudulent, and unfair business practices alleged in this Complaint;

C.    Enter an order granting all appropriate relief, including public injunctive relief, on behalf of the Class under the applicable laws;

D.    An award of compensatory damages to Plaintiffs and members of the Class in an amount according to proof at trial;

1

E.      Determine that Defendant has committed the violations of law alleged herein;

2

F.      Determine that Defendant has been unjustly enriched as a result of its wrongful conduct,

3

and enter an appropriate order awarding restitution and monetary damages to the Class;

4

G.      Costs, restitution, damages, including punitive damages, treble damages, penalties, and

5

disgorgement in an amount to be determined at trial;

6

H.      An order requiring Defendant to pay both pre- and post-judgment interest on any amounts

7

awarded;

8

I.      An award of costs and attorneys' fees; and

9

J.      Such other or further relief as may be appropriate.

10

## JURY DEMAND

11

Plaintiffs hereby demand a trial by jury for all claims so triable.

12

Respectfully submitted,

13

14

Dated:  June 8, 2022                        /s/ *Elizabeth A. Kramer*

15

                                            _____

16                                          Elizabeth A. Kramer (SBN 293129)
                                            *elizabeth@eko.law*
17                                          **ERIKSON KRAMER OSBORNE LLP**
                                            44 Tehama St.
18                                          San Francisco, California 94105
                                            Tel: (415) 635-0631
19

20                                          Benjamin F. Johns (to be admitted *pro hac vice*)
                                            *bfj@chimicles.com*
21                                          Samantha E. Holbrook (to be admitted *pro hac vice*)
                                            *seh@chimicles.com*
22                                          Alex M. Kashurba (to be admitted *pro hac vice*)
                                            *amk@chimicles.com*
23                                          **CHIMICLES SCHWARTZ KRINER**
                                             **& DONALDSON-SMITH LLP**
24                                          361 W. Lancaster Avenue
                                            Haverford, Pennsylvania 19041
25                                          Tel: (610) 642-8500

26
                                            *Counsel for Plaintiffs and the Putative Class*
27

28

# EXHIBIT A

Elizabeth A. Kramer (SBN 293129)
elizabeth@eko.law
**ERIKSON KRAMER OSBORNE LLP**
44 Tehama St.
San Francisco, California 94105
Tel: 415-635-0631
Fax: 415-599-8088

Benjamin F. Johns (*pro hac vice*)
bfj@chimicles.com
Samantha E. Holbrook (*pro hac vice*)
seh@chimicles.com
Alex M. Kashurba (*pro hac vice*)
amk@chimicles.com
**CHIMICLES SCHWARTZ KRINER
 & DONALDSON-SMITH LLP**
361 W. Lancaster Avenue
Haverford, Pennsylvania 19041
Tel: (610) 642-8500
Fax: (610) 649-3633

*Counsel for Plaintiffs and the Putative Class*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO COUNTY

| | |
|---|---|
| CHERIE DEBONO, VICTORIA BARBER individually and on behalf of all others similarly situated,<br><br>           Plaintiffs,<br><br>      v.<br><br>CEREBRAL, INC.<br><br>           Defendant. | Case No. 3:22-cv-03378<br><br>**CLRA VENUE DECLARATION OF PLAINTIFF VICTORIA BARBER PURSUANT TO CALIFORNIA CIVIL CODE SECTION 1780(d)**<br><br>**DEMAND FOR JURY TRIAL** |

I, Victoria Barber, declare as follows:

1      I have personal knowledge of the facts stated herein and, if called upon to do so, could competently testify thereto.

2.      I am a Plaintiff in the above-captioned action.

3.      I submit this declaration in support of the Class Action Complaint, which is based in part on violations of the Consumers Legal Remedies Act, California Civil Code §§ 1750 *et seq.*

4.      The Class Action Complaint has been filed in the proper place for trial of this action.

5.      Defendant Cerebral, Inc. has its principal place of business in San Francisco, CA which is within San Francisco County. Cerebral conducts substantial business, including the acts and practices at issue in this action, within San Francisco County.


I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge.


Executed on June 8, 2022 in Anacortes, Washington.

_____
                                Victoria Barber

Elizabeth A. Kramer (SBN 293129)
elizabeth@eko.law
**ERIKSON KRAMER OSBORNE LLP**
44 Tehama St.
San Francisco, California 94105
Tel: 415-635-0631
Fax: 415-599-8088

Benjamin F. Johns (*pro hac vice*)
bfj@chimicles.com
Samantha E. Holbrook (*pro hac vice*)
seh@chimicles.com
Alex M. Kashurba (*pro hac vice*)
amk@chimicles.com
**CHIMICLES SCHWARTZ KRINER**
 **& DONALDSON-SMITH LLP**
361 W. Lancaster Avenue
Haverford, Pennsylvania 19041
Tel: (610) 642-8500
Fax: (610) 649-3633

*Counsel for Plaintiffs and the Putative Class*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO COUNTY

| | |
|---|---|
| CHERIE DEBONO, VICTORIA BARBER individually and on behalf of all others similarly situated,<br><br>               Plaintiffs,<br><br>    v.<br><br>CEREBRAL, INC.<br><br>               Defendant. | Case No. 3:22-cv-03378<br><br>**CLRA VENUE DECLARATION OF PLAINTIFF CHERIE DEBONO PURSUANT TO CALIFORNIA CIVIL CODE SECTION 1780(d)**<br><br>**DEMAND FOR JURY TRIAL** |

I, Cherie Debono, declare as follows:

1. I have personal knowledge of the facts stated herein and, if called upon to do so, could competently testify thereto.

2. I am a Plaintiff in the above-captioned action.

3. I submit this declaration in support of the Class Action Complaint, which is based in part on violations of the Consumers Legal Remedies Act, California Civil Code §§ 1750 *et seq*.

4. The Class Action Complaint has been filed in the proper place for trial of this action.

5. Defendant Cerebral, Inc. has its principal place of business in San Francisco, CA which is within San Francisco County. Cerebral conducts substantial business, including the acts and practices at issue in this action, within San Francisco County.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge.

Executed on June 8, 2022 in Alameda, California.

_____
Cherie Debono