Elizabeth A. Kramer (SBN 293129)
*elizabeth@eko.law*
**ERICKSON KRAMER OSBORNE**
44 Tehama Street
San Francisco, California 94105
Tel: (415) 635-0631

Benjamin F. Johns (*pro hac vice*)
*bjohns@shublawyers.com*
Samantha E. Holbrook (*pro hac vice*)
sholbrook@shublawyers.com
**SHUB & JOHNS LLC**
Four Tower Bridge
200 Barr Harbor Drive, Suite 400
West Conshohocken, PA 19428
Tel. (610) 477-8380

*Counsel for Plaintiffs and the Putative Class*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHERIE DEBONO, VICTORIA BARBER, and JESSICA ATHERTON individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CEREBRAL, INC.<br><br>Defendant. | Case No. 3:22-cv-03378-AGT<br><br>**PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Cherie Debono, Victoria Barber, and Jessica Atherton ("Plaintiffs") individually, and on behalf of all others similarly situated, by and through their undersigned counsel, bring this action against Defendant Cerebral, Inc. ("Defendant" or "Cerebral").

## **INTRODUCTION**

1.      Cerebral is a subscription-based telemedicine company that provides its customers with access to therapy, counseling, and medication for ADHD, anxiety, depression, and other mental health conditions.

2.      Cerebral describes itself as a "mental health subscription [service] that provides clients with ongoing, comprehensive access to online care and medication management for a monthly rate."[1]

3.      Cerebral offers clients several subscription options depending on the conditions for which treatment is sought. These plans can include medication, therapy, coaching, counseling, or a combination of treatments.

4.      According to its website, a subscription includes "regular assessments, video/phone appointments with your prescriber, medication management, and medication delivery" as included in the price of a subscription. Cerebral leads consumers to believe that they can "cancel anytime" if they are unsatisfied with, or simply no longer want, their subscription. It also promises subscribers that they will have access to various points of contact at Cerebral from 6am-6pm PT Monday through Friday and from 7am-4pm PT Saturdays and Sundays, and states that "[a]ll outreach will receive a response within one business day."

5.      Cerebral lures customers with these deceptive promises only to trap them into an automatically renewing subscription that fails to provide access to adequate prescribers and counselors, makes scheduling mental health appointments unnecessarily tedious, and is virtually impossible to cancel. Customers are thus stuck paying for a renewing subscription they do not want and which does not provide the benefits that Cerebral promises.

6.      According to recent reporting by *Forbes*, leaked internal documents detail Cerebral's

---

[1] *See* Cerebral FAQ | Care model, medication, cost, anxiety, depression, and more, available: https://cerebral.com/faqs (last visited September 29, 2022).

PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT

"strict protocol for refunds."[2] The article details consumer experiences in attempting to obtain refunds from Cerebral and the difficulties they face in doing so, revealing that Cerebral has certain internal protocols in place as to when a representative can and cannot issue a refund. Customers are charged when the only available appointments are weeks away, and some customers do not even have available counselors, therapists or prescribers in their geographic location. Yet none of this is clear to customers up front: when customers sign up, their credit card is billed before they can see the schedule showing provider availability.  What customers are not told is that Cerebral's internal refund and cancellation policies make obtaining a refund nearly impossible for many people.

7.     Cerebral's business model is targeted to appeal to individuals suffering from a wide variety of mental health conditions, who need treatment and medication. Yet Cerebral exploits those vulnerabilities by luring customers in with promises for prescription medication and treatment plans, and then failing to deliver on those promises and impeding customers' ability to cancel the program.

8.     While Cerebral's marketing makes it seem as though consumers can "cancel anytime," Cerebral's cancellation process, up until recently, was unwieldy and time-delayed, requiring consumers to send an email to request cancellation. That email must then be reviewed by a Cerebral representative who then sends the subscriber a separate cancellation request form. The cancellation request form then has to be reviewed and approved by a Cerebral representative before the cancellation becomes effective, which for many consumers results in a month (or more) of paying fees for an unwanted subscription. Unlike other apps, Cerebral also does not allow customers to cancel by simply deleting the Cerebral app from their phones. While Cerebral has recently represented that it added a "cancellation" button in the User Account, in practice the button either does not appear at all or does not actually function to cancel the subscription without further steps required from the user.

9.     Cerebral's concerted pattern of misrepresentations, smokescreens, and omissions, may benefit Cerebral's bottom line, but they are unfair, deceptive, and fraudulent and have benefited Cerebral

---

[2] Katie Jennings, *Getting a Refund From Mental Health Startup Cerebral Can Take Its Own Toll on Customers*, FORBES (Feb. 18, 2022), available: https://www.forbes.com/sites/katiejennings/2022/02/18/getting-a-refund-from-mental-health-startup-cerebral-can-take-its-own-toll-on-customers/?sh=26abcd7a1cc6 (last visited September 29).

PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT

at the subscribers' expense. As set forth below, Plaintiffs bring this action for violations of the California Automatic Renewal Law, False Advertising Law, Unfair Competition Law, Consumer Legal Remedies Act, and various common law claims.

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 of the Class Action Fairness Act of 2005 because: (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one plaintiff and the defendant are citizens of different states. This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

11.     Venue properly lies in this judicial district pursuant to 28 U.S.C. § 1391 because Cerebral is headquartered within this judicial district, transacts business in this district, and is subject to personal jurisdiction in this district. Upon information and belief, Cerebral made material decisions about its business practices, and designed and created its subscription webpage from its headquarters in California. Cerebral disseminated the alleged misrepresentations and omissions from its headquarters in California, and thus the conduct giving rise to the claims at issue in this litigation occurred in this state. Additionally, Cerebral has advertised in this district and has received substantial revenue and profits from its sales of its subscription services in this district. Therefore, a substantial part of the events and/or omissions giving rise to the claims herein occurred, in part, within this district.

12.     This Court has personal jurisdiction over Cerebral because Cerebral maintains its headquarters within this judicial district, has conducted substantial business in this judicial district, and intentionally and purposefully placed its products into the stream of commerce within the state of California and throughout the United States. Moreover, the Terms and Conditions prepared by Cerebral and entered into by Plaintiffs and Class members specifies that "any claim or dispute arising in connection with the Platform or Services shall be decided exclusively by a court of competent jurisdiction located in San Francisco County, California, and you consent to the personal jurisdiction of

any venue in such courts and waive any and all jurisdictional and venue defenses or objections otherwise available."[3]


## THE PARTIES

### Plaintiffs

13.    Plaintiff Victoria Barber is, and at all relevant times has been, a resident and citizen of the State of Washington.

14.    Plaintiff Cherie Debono is, and at all relevant times has been, a resident and citizen of the State of California.

15.    Plaintiff Jessica Atherton is, and at all relevant times has been, a resident and citizen of the State of North Carolina.

### Defendant

16.    Defendant Cerebral Inc. owns and manages Cerebral, a mental health telemedicine company that offers online care and medication management for anxiety, depression ADHD, and more.  It is headquartered at 181 2nd Street, San Francisco, CA 94105.

## FACTUAL ALLEGATIONS

**A.    Cerebral's Deceptive Marketing Practices and Misrepresentations are Designed to Lure Subscribers in with False Promises**

17.    According to the National Institute of Mental HealthTrust Source, nearly 1 in 5 U.S. adults live with mental illness.[4] Accessibility to mental health services is shifting, with social media advertising and access to online therapy and telemedicine.

18.    In the spring of 2020, COVID-19 brought about rising levels of stress, anxiety and depression. But stay-at-home orders and a national emergency prompted many psychiatric and psychotherapy offices to shut down and cancel in-person appointments. Online mental health providers

---

[3] https://cerebral.com/terms-and-conditions (last visited September 29, 2022).

[4] https://www.healthline.com/health/mental-health/cerebral-review (last visited September 29, 2022).

thus surged in popularity during the COVID-19 pandemic as demand for services grew and accessibility to in-person providers was sparse.

19.     The digital mental health space was growing rapidly even before the pandemic, but stress and anxiety brought on by the pandemic have accelerated demand for virtual behavioral health services. Telehealth represented less than 1% of outpatient care before the pandemic for both mental health and substance use and other concerns. However, at the pandemic's peak, telehealth represented 40% of mental health and substance use outpatient visits during the March-August 2020 period. Telehealth use has remained strong for mental health and substance use treatment, still representing 35% of outpatient visits.[5]

20.     Cerebral capitalized off of this trajectory. The privately held for-profit startup launched in January 2020 and has grown rapidly at over 60% month-over-month, propelled by increased demand for behavioral healthcare services during the pandemic.

21.     Cerebral's strategy to lure and retain patients has been successful: It claims to have provided services to more than 350,000 consumers since launching in 2020,[6] and was valued at $4.8 billion following a $300 million funding round led by SoftBank Vision Fund 2 in December 2021.

22.     Cerebral employs deception in the structure of its autorenewal scheme in various ways, all designed to attract and retain customers with the bait of services that it never intends to provide. While Cerebral's deceptive web has several different components that can independently ensnare a consumer, taken together the components all lead to a common and predictable outcome: unintended subscriptions of Cerebral's service.

23.     First, in exchange for customer's credit/debit card information, Cerebral promises access to prescriber visits, therapy, counseling and prescriptions to help with anxiety, depression, insomnia,

---

[5] Justin Lo, *Telehealth Has Played an Outsized Role Meeting Mental Health Needs During the COVID-19 Pandemic*, KFF (Mar. 15, 2022), available: https://www.kff.org/coronavirus-covid-19/issue-brief/telehealth-has-played-an-outsized-role-meeting-mental-health-needs-during-the-covid-19-pandemic/#:~:text=There%20has%20been%20a%20rapid,than%201%25%20of%20outpatient%20visits (last visited September 29, 2022).

[6] https://commercial.cerebral.com/pharma/ (last visited September 29, 2022).

1    ADHD and more mental health services.

2         24.    Cerebral has several treatment plans that customers can choose from: Medication + Care

3    Counseling Plan, Medication + Therapy Plan, Therapy Plan, Medication + Coaching Plan, Coaching

4    Plan, Nutrition and Weigh Loss Medication Plans, or an Opioid Use Treatment Plan. The company

5    offers a $30 introductory fee, which then autorenews at a higher monthly rate of between $85 to $325

6    depending upon the plan.

7         25.    Depending on the type of plan selected, Cerebral promises access to a variety of services

8    and treatments. For example, Cerebral promises customers will have access to a "Care Counselor" to

9    support them along their journey. The Care Counselors hold a master's or bachelor's degree in a relevant

10   field and undergo "extensive, ongoing professional development training." According to Cerebral, this

11   Care Counselor provides "behavioral health tools, strategies, and education during monthly video or

12   phone sessions" and is available to chat "at any time throughout the month." The Care Counselors are

13   "well-trained in therapeutic techniques, such as behavioral activation, motivational interviewing, and

14   more" but not all are licensed therapists. These Care Counselors are intended to support medication

15   treatment journey, "focus on the now," and provide coping strategies to help customers manage mental

16   health symptoms. Cerebral represents that patients will meet with their Care Counselors once a month.

17        26.    Cerebral employs nurse practitioners or doctors that can prescribe medication

18   ("prescribers"). Cerebral represents that customers will have medication mailed monthly, and will be

19   provided monthly meetings with the assigned Care Counselor to discuss progress and learn new skills.

20   Cerebral also promotes access to a prescriber to ensure that customer's prescriptions and refills stay "on

21   track."

22        27.    With regard to therapy treatment, Cerebral assures "weekly video/phone sessions with a

23   licensed therapist," and "regular progress tracking by prescriber & therapist." According to Cerebral, its

24   Therapists hold doctoral or master's degrees in relevant fields, maintain or are in the process of obtaining

25   licenses to practice in one or more states, and undergo extensive, ongoing professional development

26   training. The Therapists are intended to diagnose psychological conditions, focus on the past and

27   present, and treat a variety of mental illnesses. Cerebral also represents that subscribers can meet with

28

their Therapist up to four times a month and can "chat securely with your therapist anytime."[7]

28.     In its FAQ section of the website, Cerebral represents that customers will be able to see a prescriber in "typically less than 7 days" after signing up. It even provides an option to see a prescriber sooner than the schedule appointment, telling customers that they can message their coordinator to determine if earlier appointments are available.

29.     Cerebral touts its telemedicine model as allowing customers to "schedule visits with your prescribing provider, therapist, or care Counselor when it's most convenient for you."[8]

30.     Customers are thus induced to sign up for Cerebral's services based upon Cerebral's representations that they will have regular access to available trained counselors, therapists, or prescribers. It is only after customers are locked into a recurring billing cycle that they realize the lack of services available to them and the near impossibility of cancelling Cerebral's subscription.

**B.     Cerebral Prioritizes Profits and Corporate Growth Over Patients**

31.     The ability of customers to schedule an appointment is contingent upon the availability of the counselors, therapists or prescribers in a certain geographic location, which is a fact that is not disclosed to customers until they are already locked into an auto-renewing subscription. Customers are charged regardless of whether services are utilized or not.

32.     Accordingly, depending on where they live, some customers might be able to schedule a next day appointment, while others may have to wait weeks, and are billed just the same. This has led many customers to leave negative reviews on Trustpilot and the Better Business Bureau who question why they are being charged when the only appointments are weeks away. None of this is made clear to customers up front: when a customer signs up for Cerebral's services, their credit card is billed before they can even see the schedule showing provider availability for their geographic location and mental health issue.[9]

---

[7] *See generally* https://cerebral.com/plans/therapy; https://cerebral.com/plans/medication-therapy; https://cerebral.com/ (last visited September 29, 2022).

[8] https://cerebral.com/faqs (last visited September 29, 2022).

[9] *See* Katie Jennings*, Getting a Refund From Mental Health Startup Cerebral Can Take Its Own Toll*

33.     Moreover, and unbeknownst to customers, Cerebral reportedly has an internal refund policy that separates out customers who "had the ability to schedule with a clinician within a reasonable time frame" and those were unable to schedule "as a result of clinician capacity issues." However, the "reasonable time frame" is undefined in either Cerebral's terms and conditions or its billing policy.

34.     Despite its representations on its website that subscribers can "cancel anytime," many customers have found cancelling their month-to-month subscription to be unnecessarily cumbersome and difficult to successfully cancel, even after Cerebral purportedly added a "cancellation" button to its app on or around June 2, 2022.

35.     Customers who demand refunds or cancellations, such as Plaintiff Debono, are sometimes offered a 30% discount to remain customers of Cerebral. Other consumers have to resort to threatening legal action or publicly shaming the company before Cerebral will issue them a partial or full refund for services unrendered.

36.     Former Cerebral Vice President, Matthew Truebe, claims in a recent labor lawsuit that Cerebral was intent on recruiting new patients and retaining current ones, and he alleges that the company "egregiously put profits and growth before patient safety," including overprescribing medications for attention deficit hyperactivity disorder ("ADHD").

37.     Cerebral reportedly spends millions of dollars a month for online ads on TikTok, Instagram and Google, all in an effort to sign up new customers and grow its subscriber base.

38.     Cerebral has recently come under scrutiny for its prescribing practices. The company recently announced that its CEO and co-founder, Kyle Robertson, stepped down from his role in the company. The leadership change comes as Cerebral is facing an investigation by the Department of Justice for its prescribing practices as "possible violations" of the Controlled Substances Act. Cerebral Medical Group received a grand jury subpoena from the U.S. Attorney's Office for the Eastern District

---

*On Customers*, FORBES (Feb. 18, 2022), available: https://www.forbes.com/sites/katiejennings/2022/02/18/getting-a-refund-from-mental-health-startup-cerebral-can-take-its-own-toll-on-customers/?sh=71a931b91cc6 (last visited September 29, 2022).

of New York in May.[10]

39.     In June and September of last year, CBS News reported on the increasing problems consumers were having with Cerebral's quality of care, including the way Cerebral diagnoses and prescribes medications. Part of the story focused on Cerebral's protocol of providers prescribing medications after only a short fifteen-minute virtual appointment. Moreover, CBS News's investigation revealed that of Cerebral's more than 1,500 prescribers listed on its website, only five are board-certified physicians. The majority are nurse practitioners from specialties outside of mental health.[11]

40.     Cerebral's goal of maximizing its bottom line comes at a hefty price to customers. Not only aree customers paying exorbitant amounts for the subscription fees, but many are paying for services never rendered as Cerebral had a habit of cancelling scheduled appointments or providers never showing up for scheduled appointments. Some customers were even told—after filling out the initial online survey and paying for a subscription for the service—that they are not a candidate for telemedicine.[12]

41.     Customers report that their Care Counselors were often not available to help navigate scheduling or respond to inquiries about missed appointments or lack of availability, and customers were left without access to any of Cerebral's providers for weeks on end.

42.     Not only were customers charged exorbitant fees for services that the company was unable to provide, but many of them suffered physically as well from incorrect dosing or missing medications due to errors with Cerebral issuing prescriptions appropriately. Some customers even reported experiencing withdraw from the lack of timely prescription refills.

---

[10] Heather Landi, *Cerebral under federal investigation for possible violations of controlled substances law*, Health Tech (May 7, 2022), available: https://www.fiercehealthcare.com/health-tech/cerebral-under-federal-investigation-possible-violation-controlled-substances-law (last visited September 29, 2022).

[11] Anna Werner, *Expert alarmed by mental health app Cerebral's speedy sessions and prescriber qualifications*, CBS News (Sept. 7, 2022), available: https://www.cbsnews.com/news/cerebral-app-mental-health/ (last visited September 29, 2022).

[12] *See, e.g.* https://www.trustpilot.com/review/cerebral.com?page=2 (last visited September 29, 2022).

**C.   Cerebral's Autorenewal Scheme Is Designed to Trap Clients into Paying for Unwanted Services**

43.    The following paragraphs describe the process for enrolling in Defendant's automatically renewing, monthly-subscription in or around the time of Plaintiffs' enrollment.

44.    Consumers interested in signing up for Cerebral can do so through Cerebral's website or directly through their smartphones by downloading the Cerebral App. Both the Cerebral App and the Cerebral website feature the same sign-up process, contained the same representations, and required the consumers to complete the same mental health evaluation prior to payment.

45.    First, a consumer is required to submit their email, first and last name, and telephone number in order to create an account on either Cerebral's website or mobile app.

46.    Once Cerebral has obtained the consumer's personal and contact information, the company's website and mobile app require consumers to answer a series of questions which "serve as a preliminary screen to establish whether medication is the correct course of treatment" for the consumer. The evaluation is comprised of nine multiple-choice questions which ask how often a consumer feels nervous, anxious restless, etc., whether these feelings have interfered with a consumer's activities of daily living, and the specific triggers for the enumerated feelings.

47.    The evaluation is used by Cerebral to immediately provide results that supposedly grade a consumer's mental health condition, such as anxiety or depression, which can range from mild to severe according to Cerebral's scale.

48.    Immediately below a consumer's evaluation results—irrespective of where such results fall on Cerebral's scale of severity—the consumer is assured that there's "room for improvement" and Cerebral can get the consumer back to "feeling like your true self."

49.    To progress to the next page, a consumer must click a button labeled "Choose Your Plan," which is paired with a statement that reads, "[o]ver 350,000 people have used Cerebral to treat their mental health conditions online and **most Cerebral members with conditions like anxiety, depression, insomnia, and ADHD report feeling improvements within 60 days!**"

50.    By asking consumers for sensitive, personal information concerning their mental health struggles and lifestyle, Cerebral fosters consumers' reasonable impression that they can expect to receive

a highly personalized treatment plan based on the results of Cerebral's evaluation.

51.     In fact, before a consumer even completes the sign-up process, Cerebral uses the consumer's previously obtained email address to send them a promotion that states, "Congratulations on taking your first step toward comprehensive mental health care! **Your care team is ready to design your custom treatment plan** and support you every step of the way." The promotional email goes on to state that a consumer can get started on their mental health journey for only $7 per week for their first month.

52.     Minutes after sending a promotional email, Cerebral uses the consumer's previously obtained telephone number to send the following text message to ensure that the consumer continues with their sign-up process: "Hi, it's Cerebral. Keep going to state your care for as little as $7/week for your first month (billed by the month)" followed by a link to Cerebral's membership sign-up page.

53.     At no point in either the promotional email or the promotional text message does Cerebral inform a consumer that the membership rate will be **automatically** charged to the consumer's method of payment on a monthly-basis.

54.     Cererbral does not actually use the information obtained by the evaluation to personalize a consumer's experience. Instead, the onboarding process culminates in the platform offering the same three plan options: "Medication + Care Counseling," "Medication + Therapy," or "Therapy." The most expensive plan, "Medication + Therapy," is highlighted as the "most effective."

55.     To choose one of the three plans, a consumer must click a "Start" button. Above the "Start" button in substantially smaller font reads, "billed monthly" and "cancel anytime." Again, at this time, a consumer is not informed that the subscription will be **automatically** billed on a monthly-basis.

56.     On the following page, where a consumer is required to enter payment information, Cerebral reinforces that by subscribing to the chosen service, a consumer will receive sessions with "a licensed therapist," "evidence-based talk therapy," and "regular progress tracking."

57.    After navigating the same visually overwhelming page filled with different font colors, sizes, logos and extraneous information, at the very bottom, a consumer is required to enter their credit/debit card information. The payment section appears as follows:



58.    Cerebral employs deceptive design tactics in its sign-up flow and cancellation processes to manipulate users into taking certain actions and being less likely to understand the need to cancel, or how to complete cancellation.

59.    Before getting to the actual subscription page, customers must engage in a lengthy questionnaire/mental health assessment. Cerebral forces its users through a nearly twenty step sign-up process before allowing them to subscribe, including "filler" screens that users must click "next" to skip past, such as screens that state "The following questions serve as a preliminary screen to establish whether medication is the right course of treatment for you;" "This will only take a minute. Please answer as honestly as possible;" "Let's take your first step to recovery together." In the midst of the survey,

PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT

Cerebral injects additional "filler" screens throughout the sign-up process, signaling to users that "We've got a few more questions to cover" or "Almost done! We have a few more questions to help us personalize your care" and requiring the user click "Continue" to proceed with registering. This process psychologically manipulates the user into experiencing mental fatigue, causing him or her to spend less time and effort critically evaluating the information about future charges or cancellation that is presented on the very last step of the extensive sign-up process, the payment page.

The payment page depicted above is the first and only time during Cerebral's multi-step sign-up process that the Company provides any information regarding the terms of the automatic renewal subscription or the process for cancelling it. Cerebral also employs visual interference in the form of intentionally low-prominence text being the only mention of auto-enrollment, thus allowing Cerebral to direct user's attention away from that critical information. As shown above, the "fine print" under the payment fields is in substantially smaller print than the remaining text on the page. It is not formatted to stand-out to the consumer as important information; it is not underlined, bolded, labeled, or differentiated in any meaningful way than the rest of the words on the payment page. To the contrary, the small low-contrast print has the effect of obscuring the information and allowing a consumer to glaze right over the paragraph before clicking the "Subscribe" button.

60.     Further, Cerebral's disclosures about automatic renewal on the subscription page do not describe what the length of the automatic renewal term is. Nor does Cerebral explain what it means that users must cancel "by 9 a.m. PT before your next billing date to avoid future charges." Users who do read this low prominence text at the end of a lengthy sign-up process are left to guess whether this means that they will be charged the day before or after 9 a.m. the day of the billing date, whenever that may be. Cerebral does not give users any confirmation or further detail about when the next billing date is, or when the subscription will actually be charged.

61.     In the instance that a consumer is able to distinguish the obscured text depicted above, Cerebral informs them that, "[b]y clicking 'Subscribe,' you agree to Cerebral's Terms of Use and Privacy Policy," which are hyperlinked for the consumer to access. Unfortunately for the consumer, the cancellation policy outlined in Cerebral's Terms of Use differs from the cancellation policy as described

during the sign-up process.

62.     According to the terms described to the consumer during the sign-up process, a Cerebral user is led to believe that they could cancel their subscription at any time by simply emailing the company before the end of the billing period. However, according to the Terms of Service prior to June 2, 2022, cancelling a Cerebral membership is not nearly this easy:[13]

How do I cancel my subscription?                                                         

Please email cancel@getcerebral.com with your request for cancellation by 9am PT one business day before your scheduled billing date to cancel your account. Our team will send a cancellation form for you to initiate the request. We respond to all cancellation requests within a few hours, but please note that your account will remain active until your cancellation is confirmed by one of our coordinators.

Once your cancellation has processed, you will continue to have access to your records through Cerebral, but your treatment and medication plan will be suspended.

Our subscription model is a monthly recurring charge and the billing period begins from the time of registration.

More information on our Recurring Billing Policy.

63.     Once its users are signed up for the hidden automatically recurring subscription, Cerebral makes it incredibly difficult for them to cancel by foreclosing normal and expected avenues of cancellation and instead forcing users to cancel through the unorthodox manner of sending an email to a designated email account which then must be "confirmed." Consumers cannot simply send an email as they are told on the subscription page, but rather must engage in a multi-step process and have their cancellation confirmed before it goes into effect.

64.     Prior to June 2, 2022, a consumer could only cancel their Cerebral subscription by

---

[13] The following screenshot was accessed and captured using the Wayback Machine. (https://web.archive.org/web/20220129163641/https://cerebral.com/faqs) (last visited September 29, 2022).

PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT

emailing "cancel@getcerebral.com" with a request for cancellation by 9 a.m. one business day prior to the consumer's scheduled billing date. Importantly, this email alone does not suffice to cancel the consumer's subscription: it is merely a request to cancel. Notably, Cerebral did not provide a termination email formatted and provided by the business so that a consumer can easily send it to the business without additional information; rather a user had to draft the personal email and provide additional information in order to cancel.

65.     Sending the cancellation email alone did not allow the user to cancel the subscription. After sending a cancellation "request" email, a consumer was required to wait for the Cerebral team to respond to the cancellation request with a separate cancellation form, which requires additional information from the consumer to progress in the cancellation process. The consumer then had to wait until the cancellation request is confirmed by the Cerebral team in order for the consumer's subscription to actually be cancelled. Prior to receiving confirmation, a consumer's account remained active and subject to Cerebral's automatic billing practices. Two of these steps—waiting for a team member to respond to the email and confirm the cancellation request—are entirely out of the consumer's control. The overall design of the cancellation process can further be classified as the "roach motel" deceptive design practice, because users find it easy to get into the automatically recurring subscription, but very difficult to get back out.

66.     These "Dark Patterns" that Cerebral employs on its website, in its app, and in communications with users work together to exploit human mental biases to create an environment in which a reasonable consumer (1) can become automatically enrolled in a recurring, non-refundable subscription without their knowledge or consent and/or (2) is unable to cancel that subscription, increasing the length of time that the user is subscribed and contributing to Cerebral's revenue stream.

67.     While Cerebral's Terms of Use prior to June 2, 2022 stated that the Cerebral team would "respond to all cancellation requests within a few hours," consumers reported substantially longer response periods that caused their account to remain active and, in some cases, experience additional unwanted membership charges.

68.     The following Reddit thread from March 2022 demonstrates the difficulty that Cerebral

PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT

members experienced in attempting to cancel their subscriptions:[14]

- "Cerebral.com will NOT let you unsubscribe from their plans after you've signed up, so you'll end paying them forever, or you'll have to cancel the debit/credit card you signed up with. I've contacted them FOUR times 5-7 days before my subscription was going to renew and asked to cancel my plan. I've heard NOTHING from them so had to go through the great hassle of canceling the card I signed up with. It was a total pain to do this.."

- "I tried Cerebral for a time and was able to cancel successfully, but they didn't make it easy. I had to submit a request on their site, wait for someone to email me for details, explain why I wanted to cancel, and then confirm yet again that I wanted to cancel."

- "There's no way to cancel within the app. They also straight up don't answer their cancellation email and you have to fill out a whole form for it to even go through. And the form has be approved after you fill it out."

69.     According to consumers' first-hand accounts, Cerebral utilized a multi-step cancellation process, contrary to the simplistic policy described during the sign-up process, to frustrate a consumer's ability to deactivate their account prior to an impending billing cycle. Cerebral's cancellation policy prior to June 2, 2022 was the antithesis of easy-to-use, timely and cost-effective.

---

[14] *See* https://www.reddit.com/r/ADHD/comments/t599gn/dont_sign_up_for_cerebralcom/ (last visited September 29, 2022).

70.     Upon information and belief, Cerebral amended its cancellation policy on or around June 2, 2022 to ostensibly provide consumers the ability to cancel their subscription by simply clicking "Cancel Subscription" in their Cerebral account. Such a cancellation feature was notably lacking in the Cerebral consumer experience prior to June 2, 2022. Around this same time, Cerebral also revised its payment page to reflect this change with its cancellation policy:



71.     Cerebral continues to employ the same deceptive design tactics in its sign-up flow and

cancellation processes despite the changes to the final subscription page.

72.     Even after Cerebral amended its Terms & Conditions and amended its subscription page to inform users that it purportedly added a cancellation feature to the user accounts, users must still engage in a lengthy questionnaire/mental health assessment before reaching the payment page. This process psychologically manipulates the user into experiencing mental fatigue, causing him or her to spend less time and effort critically evaluating the information about future charges or cancellation that is presented on the very last step of the extensive sign-up process, the payment page.

73.     The payment page depicted above is still the first and only time during Cerebral's multi-step sign-up process that the Company provides any information regarding the terms of the automatic renewal subscription or the process of cancelling it. Cerebral again employs visual interference in the form of intentionally low-prominence text being the only mention of auto-enrollment, thus allowing Cerebral to direct user's attention away from that critical information. As shown above, the "fine print" under the payment fields is in substantially smaller print than the remaining text on the page. It is not formatted to stand-out to the consumer as important information; it is not underlined, bolded, labeled, or differentiated in any meaningful way than the rest of the words on the payment page. To the contrary, the small low-contrast print has the effect of obscuring the information and allowing a consumer to glaze right over the paragraph before clicking the "Subscribe" button.

74.     The text is also deceptive and confusing because the text box appears as though it pertains solely to Medicare/Medicaid. The Medicare/Medicaid checkbox is not set apart from the previous paragraph, thereby causing confusion as to what a user is actually agreeing to by checking the box.

75.     Cerebral also fails to send any sort of post-purchase acknowledgement email, detailing the terms of the recurring subscription, the total payment charged, or the cancellation policy. Rather, Cerebral merely sends consumers a single "welcome email" inviting them to schedule an appointment and generally listing the features of Cerebral's services. The welcome email encourages users to "schedule an appointment with [their] care counselor" or "prescriber" and details Cerebral's "collaborative care" approach which is "scientifically proven to be the most effective approach for

mental health treatment." Cerebral informs users that their team is "with you every step of the way!"



**Welcome to the Cerebral family, Jessica!**

Thank you for choosing us as a partner on your mental health journey. Our top priority is to provide you with accessible, high-quality, long-term mental health care. We're in this together!

Here is some helpful information to make your experience as smooth as possible.

**Important next steps**
If you haven't already, please be sure to:
- **Schedule an appointment with your care counselor.**
- **Schedule an appointment with your prescriber.**

**Our approach**
Our "collaborative care" approach includes access to both a behavioral health care counselor & a prescriber. This combination is scientifically proven to be the most effective approach for mental health treatment.

**Your team**
This team is with you every step of the way!

76.     In this welcome email, Cerebral states that users can connect with their personal coordinators "at any time via the messaging portal in" the user account and "they'll make sure to answer any of [their] account questions within 24 hours."

77.     At the bottom of the email, as shown below, Cerebral hyperlinks its FAQs, messaging portal, and customer support line. It does not link to its Terms and Conditions nor does it spell out the details of Cerebral's autorenewal policy or cancellation procedure.

The administrative details of health care don't need to get in your way! Connect with your personal coordinator at any time via the messaging portal in your account. They'll make sure to answer any of your account questions within 24 hours.

**Any other questions?**
We're here to help!

- You can access responses to frequently asked questions here.
- Connect with your personal coordinator at any time via the messaging portal.
- Connect with customer support at **(415) 403 – 2156** or support@cerebral.com.

Thank you again for choosing Cerebral, Jessica. Don't forget to take the next step and schedule an appointment with both your care counselor & your prescriber!

Be well,
Your Cerebral Care Team

78.     Notably, Cerebral does not send consumers an email that includes details of the automatic renewal offer terms, confirms billing dates or subscription renewal dates, explains the cancellation policy, or provides any information regarding how to cancel. Rather, the only information a consumer is provided about the automatic renewal and/or the cancellation policy is in the subscription payment page itself when a consumer initially signs up, both on the pre- and post- June 2 versions of the subscription page.

79.     The one and only email that consumers receive fails to disclose critical aspects of Cerebral's subscription, including that the details can only be accessed through the User Account. It also fails to provide accurate or complete cancellation instructions or a means of cancelling.

80.     Even with the addition of the new "cancellation" option in the User Account, however, Cerebral subscribers can only cancel future charges associated with the subscription. Cerebral's Terms and Conditions provide that a user may initiate a cancellation at any time, but the cancellation will "become effective at the end of your current Subscription Period."[15] According to the Terms and Conditions, Cerebral does not define or otherwise explain what the "end of the current subscription period" is. The Terms and Conditions further provide that a subscriber "can cancel by clicking 'Cancel Subscription' in your User Account no later than the day before your next scheduled billing date to

---

[15] *See* https://web.archive.org/web/20220603204344/https://cerebral.com/terms-and-conditions (last visited September 29, 2022).

PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT

cancel your Subscription," otherwise Cerebral reserves the right to charge the consumer for the next Subscription Period.

81.     Cerebral provides no additional details to subscribers where in their User Account the "Cancel Subscription" feature is located. Instead, Cerebral nestles the cancellation option deep within the bowels of the User Account, such that subscribers are required to click through the "My Account" page, then click on the "View membership plan details" subpage, on which they will supposedly find a "Cancel Subscription" option.  Notably, subscribers are not informed of the steps they must go through to access this cancellation feature, and are left to hunt for the cancellation option on their own or by reaching out for assistance through Cerebral's customer service.

82.     However, in practice, contrary to Cerebral's representations about the presence and option of a "cancellation" button, some subscribers report that the "Cancel Subscription" feature does not appear on their account subscription page at all. Cerebral's customer service has even admitted that it is aware that some clients do not have access to a cancellation button on their accounts, as detailed in the below exchange between Cerebral customer service and a subscriber:



83.     Other subscribers report having similar issues with the "Cancel Subscription" option not appearing on their User Accounts:

PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT

⬆ Posted by u/BitcoinBilionare 3 months ago                                    🔔

**3**   **Cerebral claims there is a cancel button in the account portal but it doesn't**
⬇   **appear on any browser or mobile**

I've been trying to cancel with Cerebral for a week now. First someone told me to use the portal and
click on the cancel button which doesn't appear even when I use mobile or other browsers. After I
provided screenshots showing this they said they would 'forward my case to the cancellation team'
which hasn't happened. I have since followed up with more screenshots but they still try to bill me
every day and claim that there must be a problem with my browser or repeat the instructions to cancel
my subscription. Has anyone else encountered this issue with Cerebral?

💬 7 Comments   🎁 Award   ↗ Share   🔖 Save   •••

[16]

---

**VA**   **V A Kinch**
1 review   ◉ US

                                              Jun 22, 2022

**No Easy Way to Cancel Subscription**

I originally signed up because I thought they could provide ADHD testing, when I
found out I was wrong I went through the steps immediately to cancel the
subscription. A month later they tried to charge me, I have now reached out to their
customer support 3 separate times and they continue to tell me it is cancelled and
they continue to attempt to charge my card. They keep giving me instructions on
HOW to cancel it myself through the website and it's total BS. There is no cancel
subscription button. I am going to be forced to call and demand escalation until I
have SOMEONE with a button that allows them to cancel my account.
For a company that is supposed to support mental health, they sure are taxing mine.
I have no idea if their services are any good, but trying to get away from them is
absolutely impossible so I suspect it says something about the quality of their work.

**Date of experience:** June 22, 2022

[17]

---

[16]
https://www.reddit.com/r/cerebralfraud/comments/vc600q/cerebral_claims_there_is_a_cancel_button_in_the/ (complaint posted June 14, 2022) (last visited Sept. 21, 2022).
[17] https://www.trustpilot.com/review/cerebral.com?page=4&stars=1 (last visited Sept. 22, 2022).

PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT

⭐☆☆☆☆                                                        Jun 14, 2022

**Unethical Activity**

After a 5 minute discussion, I had medication prescribed (never used medication before). A week later I had a discussion with a counselor--note they never identify these counselors as doctors so I don't think they're real psychologists. I later had a visit with my regular doctor and she was very unhappy about the way the dosage was done and changed it.

The WORST part is that I canceled on 4/1 then on 4/22 they charged me. I contacted them and confirmed my cancellation request. Then they billed me on 5/22. Then I contacted them again. They said they added a cancel option to my account and, even though I notified them of my cancellation, I have to go in then click on My Account, then click on Change my subscription, then click to cancel.

So what they did when I requested they cancel was just add that as an option, which they didn't do till after my first complaint about the 4/22 charge. AND the Cancel Button isn't even on your account unless they turn that option on for you. So if you try to cancel, they add steps instead of canceling and then keep charging you.

That "Cancel" button should always be right there any time someone wants it and continuing to charge after multiple emails and support tickets is unethical. If a company is unethical in one way, I don't trust it to be ethical with my mental health.

**Date of experience:** June 14, 2022

[18]

---

 Jenny Jones                                                    ⋮

⭐☆☆☆☆   June 30, 2022

Charged $99 "for medications" I never got. No self-cancellation feature and have to argue with 4 or 5 people who gaslight you there is a cancel button that doesn't exist, even though I sent screenshots that it was missing, and have the latest version of the app. So I hope I don't keep getting charged $99/month for nothing, but I won't be surprised if I do. Saw more than one provider on there and they just say they're not even APRNs so can't help me and sorry no meds for me at all.

Did you find this helpful?                          [19]

---

84.    Accordingly, the ease and availability of Cerebral's "Cancel Subscription" feature is grossly overstated and misleading.

85.    Despite amending its cancellation policy in or around June 2, Cerebral failed to inform its current subscribers about this material change in the terms of its autorenewal policy. Cerebral merely

---

[18] https://www.trustpilot.com/review/cerebral.com?page=5&stars=1 (last visited Sept. 21, 2022).

[19] https://play.google.com/store/apps/details?id=com.cerebral.cerebral&hl=en_US&gl=US (last visited Sept. 22, 2022).

PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT

sent consumers an email informing them that Cerebral is updating its Terms & Conditions and Privacy Policy. While it briefly mentions Cerebral's "enhanced policies" and "improved clarity," there is no explicit mention of the material changes to the cancellation policy, or the addition of the cancellation button in a user's account. Cerebral rather attempts to bury the cancellation changes in a lengthy paragraph among a discussion of enhancing its Policies "to include more information about rules governing our Services, our payment, cancellation, and renewal policies, and your rights in the event of a dispute, including modification of our arbitration provision." The only mention of "cancellation" is in text of the same type, font, and color of that surrounding it and is not set off from the surrounding texting of the same size using symbols or other marks. Cerebral further informs users—without asking them to assent to any revised terms or conditions—that by continuing to use Cerebral after that date, the user "agreed" to the updated Policies.

### D.   Cerebral Misled and Deceived Plaintiffs into Paying for Unwanted Recurring Subscriptions That Did Not Offer What Cerebral Promised Them

#### *Plaintiff Barber*

86.     Plaintiff Barber signed-up for a Cerebral membership on March 17, 2022. When signing up for the Cerebral subscription, Plaintiff Barber engaged in the twenty-step sign-up process described above, including via multiple filler screens. Plaintiff Barber felt fatigued by this multi-step sign-up process and thus was unable to critically focus on the details of the subscription presented on the last payment page when signing up.  The terms about Cerebral's autorenewal policy as presented to Plaintiff Barber were not set apart from the surrounding text in any discernible way by being in bold, underlined, italicized or a different color. Cerebral further did not disclose to Plaintiff Barber what her subscription period was, what her next billing date would be, or what it meant by stating that Plaintiff Barber must cancel her subscription "by 9 a.m. PT before your next billing date." As such, Plaintiff Barber was confused by this vague representation because Cerebral did not present the cancellation policy in a clear and conspicuous manner.

87.     Plaintiff Barber was not required to click on or read Cerebral's terms and conditions prior

to registering, and Cerebral did not disclose—in its terms and conditions or elsewhere—that it employed a multi-step cancellation procedure that did not allow customers, such as Plaintiff Barber, to cancel their subscription simply by emailing a designated email address. Accordingly, because Cerebral did not disclose all material terms of the autorenewal policy at the time of subscribing and did not disclose material details about its cancellation policy, Cerebral did not obtain Plaintiff Barber's affirmative consent to them.

88.     Based on Cerebral's representations on its website, the medication management plan that Plaintiff Barber signed up for included one appointment with a prescriber and one appointment with a Care Counselor each month. Plaintiff Barber relied on these representations and believed that she would be entitled to one appointment with a prescriber and one appointment with a Care Counselor each month. Cerebral did not disclose prior to sign-up that the Care Counselors and prescribers would not be able to treat Plaintiff Barber, and thus that she would be paying for a subscription for services Cerebral could not—and would not—render. Had Plaintiff Barber known that she would be paying for a subscription for services that Cerebral could not render, she would not have signed up in the first place.

89.     Upon signing up for Cerebral, Plaintiff Barber received a "welcome email" from Cerebral, informing her of "Important next steps" including scheduling an appointment with a Care Counselor and scheduling an appointment with her prescriber. The email also informed Plaintiff Barber that she could "[c]onnect with [her] personal coordinator at any time via the messaging portal in [her] account" and that they would make "sure to answer any of [her] account questions within 24 hours." Plaintiff Barber relied on these representations from Cerebral about the availability of Care Counselors and the ease of scheduling appointments. Plaintiff Barber was also led to believe through these emails that Cerebral would be able to provide Plaintiff Barber with the mental healthcare assistance that she was seeking through the service. Notably, Cerebral did not disclose that certain patients, such as Plaintiff Barber, would be charged for subscription services regardless as to whether Cerebral was able to provide the requisite healthcare services or not.

90.     The welcome email notably did not disclose or describe the details of Cerebral's autorenewal procedure or cancellation method and policy, nor did it inform Plaintiff Barber on which

date her subscription was scheduled to automatically renew. The welcome email did not contain all of the automatic renewal offer terms or continuous offer terms, such as how much Plaintiff Barber was being charged or how often she was being charged. Plaintiff Barber did not receive a separate "receipt" email detailing her payment plan or subscription details, including relevant dates and terms of the subscription, or any mention of the steps that Plaintiff Barber would need to take to cancel her subscription at any time. Plaintiff Barber was led to believe that Cerebral's mental health services would cover a wide variety of mental health issues, and that she would benefit from the use of the subscription. Cerebral did not disclose to Plaintiff Barber—until after she was locked into a recurring subscription— that Care Counselors could not provide treatment or services for the type of mental health issues Plaintiff Barber was experiencing.

91.     On March 22, 2022, Plaintiff Barber attended her first scheduled appointment with her Care Counselor. The appointment only ran for ten minutes, and her Care Counselor was dismissive of her mental health history and stated that Plaintiff Barber could not be helped. By the time Plaintiff Barber was informed by her Care Counselor that Cerebral could not treat Plaintiff Barber, Plaintiff Barber had already paid the subscription fee and was enrolled in an auto-renewing subscription. Had Plaintiff Barber been informed before subscribing that Cerebral would not provide her with the treatment and mental health services that it promised at the outset, then Plaintiff Barber would not have signed up for Cerebral in the first place.

92.     Following this appointment, on or around March 29, Plaintiff Barber requested cancellation by contacting her Cerebral provider via email. She was informed by a Cerebral customer service representative that she needed to go to the message section of the Cerebral app because another appointment had been scheduled by a Cerebral Care Counselor with another provider. Notably, the information provided to Plaintiff Barber by a Cerebral representative was incorrect and further delayed Plaintiff Barber's ability to cancel her subscription.

93.     Because Cerebral informed Plaintiff Barber that it could not provide her with the required services, Plaintiff Barber did not attend an appointment with a Cerebral provider during the month of April.

94.     On April 19, 2022, before her monthly subscription period was set to renew, Plaintiff Barber made a renewed cancellation request by contacting Cerebral's cancel@getcerebral.com email address, following the cancellation procedures set forth by Cerebral. A Cerebral team member responded and said that her account indicated that a cancelation had been "requested" and that "Once the cancellation is scheduled [she] will be notified by [Cerebral's] cancellation team."  Contrary to Cerebral's representations on its subscription page, which Plaintiff Barber viewed and relied upon when signing up for Cerebral, Plaintiff Barber simply emailing the designated email address was unsuccessful in cancelling her account. The cancellation mechanism of emailing the designated email address did not provide Plaintiff Barber with a timely, easy-to-use mechanism for cancellation that allowed Plaintiff Barber to terminate the continuous service without engaging in any further steps that obstruct or delayed her ability to terminate the automatic renewal immediately. Plaintiff Barber was unable to cancel her subscription on the date that she requested cancellation. Instead, Plaintiff Barber had to wait until a Cerebral representative reviewed and then "approved" her request for cancellation, which it did not do until nearly a week later.

95.     Despite requesting cancellation of her account on March 29 through customer service and then again on April 19 by emailing Cerebral's designated email account, Cerebral charged Plaintiff Barber an $85 renewal charge on April 22, 2022. Plaintiff Barber had requested cancellation *prior to* being charged an additional fee for another month of the unwanted subscription service. As her cancellation request was still "pending" at the time she requested cancellation, Plaintiff Barber contacted her care team on April 22 to ask about getting a refund for this charge, since she had requested cancellation—per Cerebral's cancellation policy—prior to the date of her renewal. She was denied a refund for the month of April; therefore Plaintiff Barber was charged an additional month's subscription for a service that she did not want and had already requested to cancel. Cerebral finally confirmed that it had terminated her account that day, nearly a week after Plaintiff Barber requested cancellation (and not before charging her an additional month's subscription fee).

96.     Plaintiff Barber expressed an intent to opt out of resolving any disputes with Cerebral through individual arbitration pursuant to Section 14 of the Cerebral Terms and Conditions, updated

May 14, 2022, which she indicated in a letter emailed to Cerebral on May 27, 2022.

97.     Plaintiff Barber relied on the representations from Cerebral about the services it promised and the ease of cancelling the subscription based on the representations Plaintiff Barber was presented on Cerebral's website and through the sign-up process. Specifically, Plaintiff Barber relied on Cerebral's representations that users could "cancel anytime" by emailing a designated email address. Had Plaintiff Barber been aware that Cerebral would refuse her services, make it unnecessarily difficult to cancel her subscription, and then continue to charge her—and refuse to refund her—for a monthly subscription fee after requesting cancellation, she would not have signed-up or paid for a Cerebral subscription. If Cerebral were to correct the practices described herein, Plaintiff Barber would consider using Cerebral's services again in the future.

### *Plaintiff Debono*

98.     Plaintiff Debono[20] signed-up for a Cerebral membership on February 7, 2022. When signing up for the Cerebral subscription, Plaintiff Debono engaged in the twenty-step sign-up process described above, including via multiple filler screens. Plaintiff Debono felt fatigued by this multi-step sign-up process and thus was unable to critically focus on the details of the subscription presented on the last payment page when signing up.  The terms about Cerebral's autorenewal policy as presented to Plaintiff Debono were not set apart from the surrounding text in any discernible way by being in bold, underlined, italicized or a different color. Cerebral further did not disclose to Plaintiff Debono what their subscription period was, what their next billing date would be, or what it meant by stating that Plaintiff Debono must cancel their subscription "by 9 a.m. PT before your next billing date." As such, Plaintiff Debono was confused by this vague representation because Cerebral did not present the cancellation policy in a clear and conspicuous manner.

99.     Plaintiff Debono was not required to click on or read Cerebral's terms and conditions prior to registering, and Cerebral did not disclose—in its terms and conditions or elsewhere—that it employed a multi-step cancellation procedure that did not allow customers, such as Plaintiff Debono, to

---

[20] Plaintiff Debono uses "they/them" pronouns.

1  cancel their subscription simply by emailing a designated email address. Accordingly, because Cerebral

2  did not disclose all material terms of the autorenewal policy at the time of subscribing and omitted

3  material details about its cancellation policy, Cerebral did not obtain Plaintiff Debono's affirmative

4  consent to them.

5      100.    Based on Cerebral's representations on its website, the medication management plan

6  Plaintiff Debono signed up for included one appointment with a prescriber and one appointment with a

7  Care Counselor each month.

8      101.    Upon signing up for Cerebral, Plaintiff Debono recalls receiving a "welcome email" from

9  Cerebral, informing them of "Important next steps" including scheduling an appointment with a Care

10  Counselor and scheduling an appointment with their prescriber. The email also informed Plaintiff

11  Debono that they could "[c]onnect with [their] personal coordinator at any time via the messaging portal

12  in [their] account" and that they would make "sure to answer any of [their] account questions within 24

13  hours." Plaintiff Debono relied on these representations from Cerebral about the availability of Care

14  Counselors and the ease of scheduling appointments to receive their necessary prescription refills.

15  Plaintiff Debono was also led to believe through these emails that Cerebral would be able to provide

16  Plaintiff Debono with the mental healthcare assistance and timely prescription medication that they were

17  seeking through the service. Notably, Cerebral did not disclose that prescriptions would not be timely,

18  and that Plaintiff Debono would have difficulty in getting their medication filled.

19      102.    The welcome email also did not disclose or describe the details of Cerebral's autorenewal

20  procedure or cancellation method and policy, nor did it inform Plaintiff Debono on which date their

21  subscription was scheduled to automatically renew. The welcome email did not contain all of the

22  automatic renewal offer terms or continuous offer terms, such as how much Plaintiff Barber was being

23  charged or how often she was being charged.  Plaintiff Debono did not receive a separate "receipt" email

24  detailing their payment plan or subscription details including relevant dates and terms of the

25  subscription, or any mention of the multi-step process that Plaintiff Debono would need to engage in to

26  cancel their subscription at any time.

27      103.    On or around February 11, 2022, several days after signing up for the subscription,

28

Plaintiff Debono called customer service to cancel their Cerebral subscription because they were having difficulty getting their medication filled. Notably, there was no indication prior to Plaintiff Debono signing up for an autorenewing subscription that they would have any difficulty receiving the medication that Cerebral promised to deliver. The customer service representative with whom they spoke stated that there was no way of getting a refund for their membership if they decided to cancel. While the customer service representative assured Plaintiff Debono that any issues they were having with getting their medication filled would not happen again, it took until February 19 for Plaintiff Debono to receive their medication.

104.    On or around March 18, 2022, Plaintiff Debono again requested cancellation of their Cerebral subscription by contacting customer service and speaking with a representative. Cerebral offered them a 30% discount on their next monthly membership charge instead in an attempt to lure Plaintiff Debono into continuing their monthly subscription.

105.    Plaintiff Debono was issued the following charges after requesting cancellation of their account: $59.50 (charged April 7); $85 (charged May 7); $75.00 (charged May 16); and $85 (charged June 7).

106.    Having unsuccessfully sought to cancel their Cerebral subscription twice via the customer service channel, on or around May 9, 2022 Plaintiff Debono filled out and emailed to Cerebral a cancellation request form at the cancel@getcerebral.com email address. The cancellation mechanism of emailing the designated email address did not provide Plaintiff Debono with a timely, easy-to-use mechanism for cancellation that allowed Plaintiff Debono to terminate the continuous service without engaging in any further steps that obstruct or delayed their ability to terminate the automatic renewal immediately. Plaintiff Debono was unable to cancel their subscription on the date that they requested cancellation. Cerebral did not respond to Plaintiff Debono's first cancellation request form at all.

107.    Because Cerebral was unresponsive to the first cancellation request form that Plaintiff Debono sent to the designated email address, Plaintiff Debono filled out and submitted a *second* cancellation request form shortly thereafter. On May 25, following submission of two cancellation request forms, Cerebral emailed Plaintiff Debono about missing an appointment, despite them having

been requesting cancellation for over a month, including sending **two** cancellation requests to the designated email address. Notably, Debono paid for four months of the unwanted subscription prior to Cerebral finally issuing a partial refund in the amount of $84. Cerebral never actually acknowledged Plaintiff Debono's cancellation (nor informed them the date on which their subscription was actually cancelled). Aside from refunding Plaintiff Debono $84, Cerebral did not refund any other subscription fees for the months after which Plaintiff Debono requested cancellation.

108.    Plaintiff Debono expressed an intent to opt out of resolving any disputes with Cerebral through individual arbitration pursuant to Section 14 of the Cerebral Terms and Conditions, updated May 14, 2022, which they indicated in a letter emailed to Cerebral on May 27, 2022.

109.    Plaintiff Debono received an email from the Cerebral Team on or around May 29, 2022 informing them about Cerebral's updates to its Terms & Conditions of Use and Privacy Policy. Notably, nowhere in this email did Cerebral mention anything about the addition of a cancellation feature on a member's User Account, or anything else about Cerebral's material updates to its cancellation policy:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16

## Cerebral ▽

**Hi Cherie!**

We are updating our Terms & Conditions of Use and Privacy Policy (together, the **"Policies"**). At a glance, here's what these updates mean for you:

- **Enhanced Policies:** We've enhanced the Policies to include more information about rules governing our Services, our payment, cancellation, and renewal policies, and your rights in the event of a dispute, including modification of our arbitration provision. We've also included more information on how we use your personal information.
- **Improved Clarity:** We reorganized some topics so they're easier to find and updated some language to make them easier to understand.

Please review the updated Policies, which have now become effective. By continuing as a user of Cerebral after this date, you are agreeing to the updated Policies.

Thank you and be well,
Your Cerebral Care Team

17    110.    Plaintiff Debono was unaware of the material changes to Cerebral's cancellation policy,

18  including the fact that Cerebral supposedly added an automatic cancellation feature to Plaintiff Debono's

19  User Account. Plaintiff Debono did not know whether they had access to this feature in their application,

20  or where to find it. Had Plaintiff Debono been made aware of this automated cancellation feature,

21  Plaintiff Debono would have used it to attempt to cancel their subscription since Cerebral had not yet

22  confirmed cancellation of Plaintiff Debono's account by this time.

23    111.    Plaintiff Debono relied on the representations from Cerebral about the services it

24  promised and the ease of cancelling the subscription based on the representations On Cerebral's website

25  and through the sign-up process. Specifically, Plaintiff Debono relied on Cerebral's representations that

26  users could "cancel anytime" by emailing a designated email address and attempted cancellation twice

27  through this mechanism. Neither cancellation request sufficed to actually cancel Plaintiff Debono's

28

PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT

subscription. Had Plaintiff Debono been aware that Cerebral would not fill their prescriptions in a timely fashion, make it unnecessarily difficult to cancel their subscription, and then continue to charge them—and refuse to refund them—for monthly subscription fees after requesting cancellation, they would not have signed-up or paid for a Cerebral subscription. If Cerebral were to correct the practices described herein and provide timely prescription medication, Plaintiff Debono would consider using Cerebral's services again in the future.

### *Plaintiff Atherton*

112.     Plaintiff Atherton signed-up for a Cerebral membership on April 21, 2022. When signing up for the Cerebral subscription, Plaintiff Atherton engaged in the twenty-step sign-up process described above, including multiple filler screens. Plaintiff Atherton felt fatigued by this multi-step sign-up process and thus was unable to critically focus on the details of the subscription presented on the last payment page when signing up.  The terms about Cerebral's autorenewal policy as presented to Plaintiff Atherton were not set apart from the surrounding text in any discernible way by being in bold, underlined, italicized or in a different color. Cerebral further did not disclose to Plaintiff Atherton what her subscription period was, what their billing date would be, or what it meant by stating that Plaintiff Atherton must cancel her subscription "by 9 a.m. PT before your next billing date." As such, Plaintiff Atherton was confused by this vague representation because Cerebral did not present the cancellation policy in a clear and conspicuous manner.

113.     Plaintiff Atherton was not required to click on or read Cerebral's terms and conditions prior to registering, and Cerebral did not disclose—in its terms and conditions or elsewhere—that it employed a multi-step cancellation procedure that did not allow customers, such as Plaintiff Atherton, to cancel their subscription simply by emailing a designated email address. Accordingly, because Cerebral did not disclose all material terms of the autorenewal policy at the time of subscribing and omitted material details about its cancellation policy, Cerebral did not obtain Plaintiff Atherton's affirmative consent to them.

114.     Based on Cerebral's representations on its website,the medication management plan Plaintiff Atherton signed up for included one appointment with a prescriber and one appointment with

a Care Counselor each month.

115.     Upon signing up for Cerebral, Plaintiff Atherton recalls receiving a "welcome email" from Cerebral, informing her of "Important next steps" including scheduling an appointment with a Care Counselor and scheduling an appointment with her prescriber. The email also informed Plaintiff Atherton that she could "[c]onnect with [her] personal coordinator at any time via the messaging portal in [her] account" and that they would make "sure to answer any of [her] account questions within 24 hours."

116.     The welcome email did not contain all of the automatic renewal offer terms or continuous offer terms, such as how much Plaintiff Atherton was being charged or how often she was being charged. Plaintiff Atherton did not receive a separate "receipt" email detailing her payment plan or subscription details, including relevant dates and terms of the subscription, or any mention of the steps that Plaintiff Atherton would need to take to cancel her subscription at any time.  Cerebral further did not disclose in the welcome email or the "receipt" email that Cerebral would make the cancellation process unnecessarily difficult and continue to charge Plaintiff Atherton after she requested cancellation.

117.     On the same day she signed up, and only after she was charged $85 for the initial month of membership, Cerebral asked Plaintiff Atherton to produce a form of identification. Nowhere on the subscription page or elsewhere did Cerebral disclose that it would require Plaintiff Atherton to provide a form of identification to confirm her membership. Cerebral omitted this detail on its website and throughout the subscription process. Had Plaintiff Atherton known that Cerebral would require her to provide a form of photo identification in order to register for the subscription, she would not have signed up in the first place.

118.     Since Plaintiff Atherton was still waiting for updated state identification to be sent by her state, she reached out to customer service via telephone that same day to explain her situation and also to request immediate cancellation of her account in lieu of this requirement. When she tried calling customer service, her calls were often dropped after waiting on hold for approximately an hour for a representative to come on the line. The time spent on the phone waiting for Cerebral customer service to respond to Plaintiff Atherton was time that Plaintiff Atherton could have spent doing other things,

PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT

1  such as work or recreation.

2      119.    Unable to reach any customer service agents by phone, Plaintiff Atherton emailed

3  Cerebral via the designated "cancel@getcerebral.com" cancellation email address to request immediate

4  cancellation of her subscription. Cerebral never responded to these emails. The cancellation mechanism

5  of emailing the designated email address did not provide Plaintiff Atherton with a timely, easy-to-use

6  mechanism for cancellation that allowed Plaintiff Atherton to terminate the continuous service without

7  engaging in any further steps that obstructed or delayed her ability to terminate the automatic renewal

8  immediately. Plaintiff Atherton was unable to cancel her subscription on the date that she requested

9  cancellation. Cerebral did not respond to Plaintiff Atherton's cancellation request at all, and yet

10  continued to charge her account for subsequent subscription payments *after* she requested cancellation.

11      120.    Because Cerebral did not cancel Plaintiff Atherton's account when she requested

12  cancellation, Plaintiff Atherton was forced to file a dispute of the charges made by Cerebral with her

13  bank. While her bank was not successful in reversing the charges Cerebral made, they did put a block

14  on any further charges to her card by Cerebral.

15      121.    Despite calling Cerebral to request cancellation on the same day she signed up, and thus

16  clearly "before 9 a.m. PT on the day before [her] next billing date", Plaintiff Atherton was charged for

17  unwanted Cerebral subscriptions for the months of April 21, 2022, May 21, 2022, and June 21, 2022.

18      122.    Further, Plaintiff Atherton does not recall having ever received notification from

19  Cerebral as to its change in terms of service, including the material changes Cerebral made to its

20  cancellation policy around the end of May 2022. Notably, Plaintiff Atherton did not receive an email or

21  other alert to inform her of the material changes that would impact her Cerebral subscription. Thus,

22  Cerebral did not inform Plaintiff Atherton that she had the ability to cancel her subscription through a

23  cancellation feature in her Cerebral application. Had Plaintiff Atherton knew about the existence of this

24  feature (or where to find it), she would have attempted cancellation through that mechanism as well.

25      123.    Plaintiff Atherton expressed an intent to opt out of resolving any disputes with Cerebral

26  through individual arbitration pursuant to Section 14 of the Cerebral Terms and Conditions, updated

27  May 14, 2022, which she indicated in a letter emailed to Cerebral on June 11, 2022.

28

PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT

124.    Plaintiff Atherton relied on the representations on Cerebral's website and through the sign-up process. Specifically, Plaintiff Atherton relied on Cerebral's representations that users could "cancel anytime" by emailing a designated email address. Had Plaintiff Atherton been aware that Cerebral would require that she submit a form of photo identification, make it unnecessarily difficult to cancel her subscription (despite requesting cancellation on the same day as sign-up), and then continue to charge her—and refuse to refund her—for monthly subscription fees after requesting cancellation, she would not have signed-up or paid for a Cerebral subscription. If Cerebral were to correct the practices described herein, Plaintiff Atherton would consider using Cerebral's services again in the future.

**E.      Cerebral Is Aware of the Deceptiveness of its Automatic Renewal Scheme and Difficult Cancellation Process**

125.    In continuing to carry out its fraudulent billing and marketing tactics, Cerebral has ignored numerous glaring red flags demonstrating that consumers are being misled, including abnormally high complaint rates.

**1.    Cerebral Has Received Hundreds of Complaints Regarding the Deceptiveness of its Scheme**

126.    Through the Better Business Bureau ("BBB"), Cerebral has received more than 196 customer reviews, and has a rating of 1.08 out of 5 stars. There have been 286 customer complaints closed within the last 3 years.

127.    The complaints on the BBB website echo the Plaintiffs' experiences, as consumers complain that they were induced to pay for a subscription that did not provide the services expected and which was extremely difficult to cancel, resulting in consumers paying for subscription services they did not want. Like Plaintiffs, other Cerebral customers have expressed similar outrage about Cerebral's predatory scheme and difficult cancellation process, including in the following complaints posted on the BBB's website: [21]

---

[21]     https://www.bbb.org/us/ca/walnut/profile/counseling/cerebral-1216-1532400/customer-reviews;

PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



01/18/2022

Cancelled membership in due to counselor unavailability, continued to be charged, refund not issued for September, October, November 2021, amount $807.00. Multiple emails, phone calls and social media outreach - did everything I could to get their attention.



August K

05/17/2022

Charged me without explanation and without providing a service. Refuse to issue refunds, provided a cancellation form with no accurate answers for me to be able to fill in to cancel the "Subscription" Pure fraud



Emily D

05/16/2022

I wish I could give 0 stars. Signed up and paid for the therapy and medication subscription just to be told AFTER I paid that they don't have enough therapists available to get me one. I immediately canceled my membership and emailed them for a refund. They sent me a form to fill out to cancel my membership but said nothing about the refund. I again demanded a refund since I got none of the service they provided. After my account was cancelled and I emailed them a 2nd time asking for a refund they responded and said they found me a therapist, I said that's not what I asked for, I asked for a refund since I was irritated at that point of how horrible they were to customers, and I had already cancelled my account and told them I didn't want their services anymore. Still no response, still no refund. They're scam artists.

https://www.bbb.org/us/or/portland/profile/mental-health-services/cerebral-inc-1296-1000111149/complaints (last visited September 29, 2022).

- 38 -

PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



Gretchen H

⭐☆☆☆☆                                    05/06/2022

Unfortunately you have put in credit card information before
scheduling an appointment. When you get to the place to schedule
an appointment it says "no availability" but they still charge your
credit card. I asked for a full refund based on their inability to let
me schedule an appointment and they only gave me a 30% refund.
I received no services and was scammed out of some money.
Highly recommend no one use this company.



Alexis S

⭐☆☆☆☆                                    04/18/2022

I was given misleading information regarding pricing multiple
times, I eventually canceled and did not use my services then I was
charged again for another month. While I'm still paying for
medication that has also been canceled. I retained the cancelation
email as well. Originally I did both the medication and therapy plan,
I switched to therapy only under the guidance of my care team
because I needed a plan that worked better for me financially. I
was told that if I switched to therapy only and did two
appointments instead of four that it would be half of the price. I
was charged full price and when I inquired about this a second
time I was told I could only get a discount for 33%, which I still did
not receive. I've reached out to cerebral support for a refund and
was told I did not qualify. I've canceled my services and I'm still
paying for medication and therapy without having any
appointments or prescription.

PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



**Ashley T**
★☆☆☆☆
04/14/2022

this is a disgusting company preying on people who have mental health issues. I have emailed multiple times to cancel my account and can't get through anyone on the phone. They have repeatedly charged my card for services that were NOT used. I had to cancel my credit card and file a dispute to get my money back - and we are not talking about arbitrary funds. $325 a Month is being charge on my card with no action for refunds or confirmation of cancellation. I am disgusted and would urge anyone and everyone to stay far far far away from this company and their predatory claims.

**Amalia B**
★☆☆☆☆
04/01/2022

BEWARE!!!! Please do not sign up for this service! They claim to help people with mental health but they are just looking to take your money. Upon signing up they charged my card immediately without using any services. It says they accepted my insurance but after multiple failed attempts to input my insurance (even tho all the info was correct) the site kept giving me an error message. Also they didn't have any available appointments for weeks in advance. All communication is through email and painstakingly slow with auto responses and no details. After realizing this I wanted to cancel but they make it nearly impossible to do so. After multiple emails of poor communication on their part and with no explanation refunded me $23.70 of a $79.00 charge. Keep in mind I literally did not use any of their services. They later explained this is a "strict policy" they have. So your policy is to take peoples money without them receiving any services?? This company is pure GREED. They do not want to help people with mental health problems they only want to take your money. This is pathetic to take advantage of vulnerable people in their time of need. Please don't make the same mistake and join this site. Save yourself the trouble.

PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT

05/12/2022

The company frequently had tech issues and I was unable to maintain contact with my counselor and prescriber. When I did, the interaction was rushed. I ended up only having a 5 minute talk with my counselor the entire time I was signed up. It was also impossible to set follow-up appointments through their site. You had to reach out to their support team directly who would assign you a time that may not be convenient for your schedule. Because of this, both my husband and I decided to cancel our ********** *********** *********** was done well in advance to avoid a charge during the next billing cycle, but we were both charged anyway. I reached out to get a refund as soon as I noticed and again after another month had gone by. I was told someone would get in touch, but no one has corrected the issue. The only response I have gotten has been repeated automates emails.

04/28/2022

I subscribed to ******** in January. I tried to schedule an appointment in February but the cite wouldn't let me but still took ******* so I had to reschedule for March in which they took another payment of $85.00 . I was unable to have my first session in March because it was canceled a couple days before my appointment date. Afterwards I emailed the company to cancel my subscription because I began to think it was a scam. Today, I ****** onto my mobile banking app to see that they have taken another ******* They have taken a total of ******* over the last few months and I've never ****** a therapist or ***********

128.    Scores of similar complaints on Trustpilot, Reddit, and Twitter make clear that Cerebral customers are unwillingly being charged for monthly subscription fees for services that they wish and have attempted to cancel. Out of the 4,409 reviews on Trustpilot, 21% of customers rate Cerebral as "poor" or "bad." A sample of these consumer complaints are contained below:

PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Posted by u/NotGoing2EndWell 3 months ago

**732**

# Don't sign up for Cerebral.com!

Tips/Suggestions

Cerebral .com will NOT let you unsubscribe from their plans after you've signed up, so you'll end paying them forever, or you'll have to cancel the debit/credit card you signed up with.

I've contacted them FOUR times 5-7 days before my subscription was going to renew and asked to cancel my plan. I've heard NOTHING from them so had to go through the great hassle of cancelling the card I signed up with. It was a total pain to do this.

If you look at Cerebral's Better Business Bureau page, you'll see there are many others who've experienced the same.

172 Comments    Share    Save    Hide    Report                99% Upvoted [22]

JS  **jen schaffroth**
1 review    US

★☆☆☆☆                                                    4 days ago

**Absolute scam!**

Absolute scam!
After filling out the initial online survey and subscribing to the service, I was told that I am not a candidate for telemedicine. The system prompted me to a link where I could request a refund but that link is telling me they don't provide refunds! Who charges for a service that they can't provide?! After a week of back and forth (seriously more than 20 emails) they are offering me a $9 refund. Seriously? If I ordered a pair of shoes off the internet but they didn't have my size they wouldn't give me a partial credit because they had the shoes in a different size than I needed.
This company is preying on people with mental illness and stealing their money.
BEWARE!!                                                    [23]

---

[22] https://www.reddit.com/r/ADHD/comments/t599gn/dont_sign_up_for_cerebralcom/ (last visited September 29, 2022).

[23] https://www.trustpilot.com/review/cerebral.com?stars=1 (last visited September 29, 2022).

PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT



**PR**  **Private**
1 review  ⊙ US

★☆☆☆☆  ✔ Invited                                                                6 days ago

**deceptive and now trying to defaud**

So Issue #1:

I was told that I would get an appointment explicitly with a prescriber. I was asked
to choose options from a list of meds that included included Adderall. Then I was
charged a fee up front and after that I was told (at the start of my appointment)
that it was against policy to fill Adderall. Not a single flag or warning whatsoever
when I chose Adderall from a list of meds. This is unethical and deceptive at best.

THEN the real problems began. In order to get my subscription canceled I could
not do so anywhere on my account online... I had to search before finding out I
had to email asking specifically. Then I get an email saying I had to fill something
out (yet another road block) and then get a message saying it would be several
days. A week later nothing has been processed and I was still listed as due to be
charged $325 in June for a continued subscription.

So... here I am having filled it out again and sent more letters forwarding and
documenting the details for my bank. Very likely if I don't hear from them I will
have to cancel my credit cards to prevent the charge and get new ones over this
mess.

So yeah... deceptive, unethical business tactics followed by what is looking to be
outright fraud.

<sup>24</sup>

---

👤  **Amanda Finley Digs All The Things**            ···
      @rubyslippahs

I've been trying for WEEKS to cancel my @cerebral
subscription. WAS ON HOLD WITH THEM when they
charged me $89. WAS STILL LIVING IN  A TENT AT
THE TIME. They are refusing to refund me because I
didn't contact them soon enough. They make
cancellation impossible to find on the app.

10:50 AM · May 27, 2022 · Twitter for Android

<sup>25</sup>

---

<sup>24</sup> *Id.*

<sup>25</sup> https://twitter.com/rubyslippahs/status/1530199685025210368 (last visited September 29, 2022).

PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT



**Jose TVI Class**
1 review   ⊙ US

★ ★ ★ ★ ★                                                      May 30, 2022

**Cerebral is con artist trash disguised as Psychology**

Cerebral is con artist trash. Research how they are being sued and how frustrating
it is to cancel an account. I was suffering from insomnia and they assumed I was
stressed out. I didn't have anxiety at all, I figured out my insomnia issues on my
own.

All Cerebral offered me were pills and no real solutions to my insomnia. I refused
to take any of the pills they offered and my psychologist was rude to me because I
didn't take them. He said, "pills are all I have to offer you".

After my disappointing experience, I immediately wanted to cancel my account but
there are no options to cancel on their website or their app. I had to google how to
cancel the account. After I emailed to cancel my account, they contacted me back
and said sorry to see you go.

2 days later they charged my account again and my account is still active. Now
I'm contacting my credit card and disputing every charge. Because they are
refusing to refund me my money and cancel my account.

Do not support this company. Do not become another victim of their scam
services. They are trash.

26



Fearless-Control-882 · 1 mo. ago

I left this service in January for so many reasons and just now got an email that they're going to
charge me $20.00 because I owe them for services. No invoice, no breakdown, nothing. The best
part is you cannot access your old invoices after you cancel either. SCAM OF A COMPANY. I literally
cancelled it months ago and that was a pain in my ass then too because I had to basically fight them
to cancel.

⇧ 3 ⇩  💬 Reply  Share  Report  Save  Follow

27

---
26 https://www.trustpilot.com/review/cerebral.com?stars=1 (last visited September 29, 2022).

27 https://www.reddit.com/r/cerebralfraud/comments/u9x8ud/if_you_need_a_100_refund_threaten_leg
al/ (last visited September 29, 2022).

PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT



**Timothy Mendez**
@Trimnation1994

@cerebral can someone please contact me about this refund we should have gotten. You guys have done us so dirty. You made me lose my job, you charged us and state "there's no way to refund us" the $254.50 you guys have taken. Including $175.50 after we cancelled?

11:21 PM · May 26, 2022 · Twitter Web App

[28]



**Jared Price**
1 review · ◎ US

                                           Updated 5 days ago

## I wish I could give a lower rating.

This company gave me so much trouble while using their service. I never spoke to a single counselor while paying for their service. I would schedule appointments and they would get cancelled the day of or while I'm waiting for the session to begin. All messages received felt scripted or automated. The medical prescriber talks to you for about 4 minutes before writing you some random medication and charges you 75 dollars. When asking customer service about the issues I have been happening, they said there was nothing they could do because there was no record of these things happening and there was no record of me calling support even though I called them a dozen times about this issue. I had to call and write them for 2 weeks before they claimed they would give me a 30% refund. That also was a lie and I never received my refund. This company does not care about your mental health and is primarily profit driven. If you enjoy wasting time and money cerebral is perfect for you.

EDIT: There is nothing that cerebral can do to get me to change my review. It was literally the worst introduction to mental health treatment I could have possibly had.

[29]

129.     Cerebral is further aware that users are experiencing issues with the newly added

---

cancellation feature as demonstrated through the following complaints—some of which Cerebral even responded to:

**Michelle S**
⭐☆☆☆☆                                                                    07/25/2022

I attempted to cancel my membership on the 1st, the 5th, the 10th, the 15th and again on the 21st of July. Finally was able to get my account cancelled. They are refusing to refund me because "I didn't cancel before my membership renewed itself". I find it extremely irritating that I have tried several times and they finally get back to me after I was charged. I would never recommend anyone to cerebral. They need a better system. Their customer service is terrible. I am working on disputing the charges with my bank and I am also working on getting my state attorney general involved because this is terrible. If this happened to me, I can only imagine how many people this is happening to. What a shame.

[30]

**Initial Complaint**                          **Complaint Type:** Billing/Collection Issues
08/02/2022                                       **Status:** Resolved ❓

I turned to ******** because my daughter ********* ******** wanted therapy and didn't have health insurance. I gifted her the ****** health services for *** per month. She has been doing much better over the last few months. We have been trying to cancel the ******** services off my credit card. There is not a way a cancel this account button in the account. When my daughter emails "customer service" to cancel the account. Cerebral will email her a ******* ****** ****** I don't want a ******* ****** ****** I want ******** to STOP CHARGING MY CARD!!!!! My ******* credit card is **** ******* My credit card company *********** (case # ****** has to use a different process to cancel the charges because the Cerebral contract does not use the recurring billing code. Cerebral uses a monthly billing code in the credit card billing system and can transfer the charge to any other credit card.

[31]

---

[30] https://www.bbb.org/us/ca/walnut/profile/counseling/cerebral-1216-1532400/customer-reviews (last visited Sept. 22, 2022).

[31] https://www.bbb.org/us/ca/walnut/profile/counseling/cerebral-1216-1532400/complaints (last visited Sept. 22, 2022).

PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT



Kaylee Foster

★ ☆ ☆ ☆ ☆   August 22, 2022

The providers are good. However nothing else works well and it is almost impossible to cancel your subscription. I have been trying to cancel and not only have they taken the "cancel" option off both the website and app, but when you try to call, there is no help. It's 3 for cancelation questions but it just loops you right back to the start menu. I have tried this app for around a year and have been paying for several months without any sort of contact or follow ups.

8 people found this review helpful

Did you find this helpful?   Yes   No

Cerebral                                                   August 23, 2022

Thank you for taking time to share your experience with Cerebral. Doing so helps us improve our services, and we're sorry to hear that the process of canceling your subscription wasn't a more seamless one. This is an understandably frustrating experience. Please feel free to reach out to support@cerebral.com for more direct

Mandy Clere

★ ★ ☆ ☆ ☆   June 18, 2022

I really tried to love this membership, but there are several things that are a turn off and why I canceled. You can't cancel the subscription even when they tell you you can. There was no cancel button and I had to email several times vefore I was canceled. They keep trying to charge my card even though my account showed me as deactivated. They've tried 4 times now to charge me! Horrible customer service.

38 people found this review helpful

Did you find this helpful?   Yes   No

Cerebral                                                   June 22, 2022

Our mission is to provide accessible and affordable high-quality care to our clients, and we're sorry that this was not your experience. You can reach out to us at reviews@cerebral.com with a brief description of the issues you've been having, as well as the username used here in this review, so that we can connect. Best, Cerebral Support Team

---

[32] https://play.google.com/store/apps/details?id=com.cerebral.cerebral&hl=en_US&gl=US (last visited Sept. 22, 2022).

[33] *Id.*

PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT

J   James Cash   ⋮

★☆☆☆☆   September 15, 2022

They don't have a cancel button or anyway to remove payment info when you don't want to be charged. Care providers are unlikely to message you for anything other than a missed payment. You have to call support and request a cancel or send an email that can take up to 30 days to cancel. This service is not worth it.

Did you find this helpful?   [ Yes ]   [ No ]

Cerebral                                                September 16, 2022

We're so sorry to hear your experience was disappointing. If you'd like to cancel your subscription, please log in to your account, navigate to the dropdown menu on the top right of your screen, and select "My Account", which shows your membership plan details with the option to cancel. For further assistance, please contact support@cerebral.com.

[34]

131.    Thus, after receiving thousands of complaints from customers who were unwillingly enrolled in Cerebral's auto-renewing subscription—paying for services never rendered—Cerebral knew or should have known that its cancellation process was unnecessarily difficult, trapping customers into paying for a subscription that they did not desire and wished to cancel. Some customers report having to resort to cancelling their credit cards or disputing charges with their banks to avoid unwanted charges after cancelling their subscription.

132.    Yet Cerebral has continued its marketing ploy, disregarding the fact that thousands of customers are paying for services never rendered and are unable to cancel and thus charged for non-refundable memberships.

### 2. Cerebral Acknowledges the Elements of its Enrollment Scam in its Communications to Customers

133.    Cerebral's responses to customers on consumer sites such as BBB, Google PlayStore and Trustpilot show that Cerebral was well aware of its scheme, providing the same canned response to consumers acknowledging the "less-than satisfactory care" and stating that, as a mental health company,

---

[34] *Id.*

PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT

Cerebral is "wholeheartedly focused on improving the well-being of thousands of individuals who may not have had access to, or the means to afford, quality mental health care." It invites customers to reach out to the Cerebral Team to "hopefully help repair your trust in Cerebral."

134.    Cerebral provided this response on multiple customer reviews regarding the difficult cancellation process. Cerebral is also aware that customers are facing difficulties in contacting customer care because Cerebral's customer service is virtually non-existent. [35]

135.    Cerebral also recognizes that customers experience "difficulty cancelling" and "difficulty utilizing the service," lamenting that it is sorry to hear that customers' experiences were "disappointing," inviting customers to separately reach out to Cerebral Customer Support to further discuss their disputes.[36]

### 3. Cerebral Knows its Claims of Available Trained Professionals is False and Misleading

136.    Similarly, Cerebral is aware that it is unable to provide available trained professionals for subscribers within a reasonable period of time. Despite advertising that Cerebral subscribers will have "regular" video phone sessions with an assigned care counselor and will be able to see a prescriber in "typically less than 7 days," Cerebral is aware that many subscribers face difficulties in scheduling appointments due to lack of availability.

137.    The Cerebral Team has acknowledged—and responded to—consumer complaints that when they go to schedule an appointment, Cerebral tells them there is "no availability" of providers in their area, yet their credit cards are charged anyway.[37]

138.    One Cerebral subscriber, Katie Mac, took to TikTok in December 2021 to relay her experience of having to enter her credit card information before choosing a therapist only to learn that— after she had already provided her credit card information and was locked into a subscription—only two

---

[35] *See, e.g.*, https://www.bbb.org/us/ca/walnut/profile/counseling/cerebral-1216-1532400/customer-reviews (last visited September 29, 2022).

[36] *See, e.g.* https://www.trustpilot.com/review/cerebral.com?page=2&stars=1 (last visited September 29, 2022).

[37] *See, e.g.* https://www.bbb.org/us/ca/walnut/profile/counseling/cerebral-1216-1532400/customer-reviews (last visited September 29, 2022).

PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT

therapists were available in her area, neither of whom met her needs. This was a far cry from the "hundreds" of options Cerebral advertised, which induced Ms. Mac into subscribing. It was not until having gone back and forth with Cerebral *four* times before Cerebral even offered Ms. Mac a paltry 30 percent refund for a service she never used that did not provide a treatment that suited her needs.[38]

139.    Despite its knowledge that it cannot live up to its public representations about available access to care providers, Cerebral is steadfast in its deceptive marketing and enrollment processes, falsely advertising the availability of trained professionals and preventing customers from discovering the truth until after they are locked into a nonrefundable subscription.

### 4.  Cerebral Only Provides Refunds to Customers Who Threaten Legal Action

140.    When Cerebral does provide refunds, it typically only does so after a squeaky wheel customer threatens legal action or publicly complains.

141.    Internal documents reportedly reveal Cerebral's strict protocol for issuing refunds. As reported by *Forbes*, Cerebral's internal refund policy lays out 12 specific scenarios when the company will grant a full refund, including threats of legal action.[39]

142.    The policy further separates out customers who "had the ability to schedule with a clinician within a reasonable time frame" and those were unable to schedule "as a result of clinician capacity issues." However, the "reasonable time frame" is undefined in either Cerebral's terms and conditions or its billing policy.

143.    Cerebral's acting CEO and former chief medical officer and psychiatrist, David Mou, denied any awareness about the timelines of Cerebral's internal refund policies, and said that Cerebral does not make these policies public to consumers because "communicating specific thresholds

---

[38] Carly Stern, *Woman slams Simone Biles-backed therapy app Cerebral, accusing the company of 'scamming' users and 'preying' on those with mental illness by pre-charging for services it doesn't provide*, Daily Mail (Jan. 26, 2022), available:https://www.dailymail.co.uk/femail/article-10444505/Woman-slams-therapy-app-Cerebral-accusing-scamming-people.html (last visited September 29, 2022) .

[39] Katie Jennings, *Getting a Refund From Mental Health Startup Cerebral Can Take Its Own Toll on Customers*, FORBES (Feb. 18, 2022), available: https://www.forbes.com/sites/katiejennings/2022/02/18/getting-a-refund-from-mental-health-startup-cerebral-can-take-its-own-toll-on-customers/?sh=58a952661cc6 (last visited September 29, 2022).

externally could cause greater confusion."

144.     The *Forbes* article details the specific experience of a Cerebral subscriber, "Elizabeth," who unknowingly agreed to an "upgraded" charge for therapy and had contacted Cerebral to request a refund for the two separate charges on her bill. The Cerebral representative told Elizabeth via email that "since we bill using a subscription model, we are unable to reverse charges regardless of whether our services have been utilized." Less than an hour after Elizabeth detailed this interaction on Twitter, a representative from the corporate office at Cerebral left a voicemail on her phone regarding her tweet, blaming Elizabeth for not "reading[ing] the terms and conditions when you sign up for things" claiming that it is not Cerebral's "fault if [she chose] not to do that." The voicemail ended with the Cerebral representative admonishing Elizabeth to "keep your comments to yourself." It was only after Elizabeth sent a follow up email to Cerebral threatening to report the company to her state attorney general that Elizabeth was notified she would be receiving a full refund.[40]

145.     Protecting its own reputation appears to be a priority in Cerebral granting refunds. The internal refund policy says that full refunds will also be granted if a customer "threatens leaving a negative review" on websites, including Trustpilot, the Better Business Bureau or Reviews.io.

146.     The opaque customer service policies are drawing ire from Cerebral staff as well as customers. A Cerebral therapist told *Forbes* that "the main thing that a lot of employees are asking for is just transparency…From what all of us are being told, our company is doing well and we're experiencing extreme growth. Why not make an effort to do right by your clinical staff and do right by the patients that we're there to serve?"[41]

## CLASS ACTION ALLEGATIONS

147.     This action is brought as a class action pursuant to Rule 23(a) and 23(b)(2), (b)(3) and (c)(4) of the Federal Rules of Civil Procedure. Plaintiffs seek certification of the following Class:

> Nationwide Class: All persons in the United States who purchased a Cerebral subscription via the Cerebral website or mobile app and who (i) were charged by

[40] *Id.*

[41] *Id.*

Cerebral for a subscription and (ii) did not receive a full refund or chargeback of all Cerebral subscription charges.

In addition and/or in the alternative, Plaintiffs seek certification of the following State class:

California Class: All persons in California who purchased a Cerebral subscription via the Cerebral website or mobile app and who (i) were charged by Cerebral for a subscription and (ii) did not receive a full refund or chargeback of all Cerebral subscription charges.

Washington Class: All persons in Washington who purchased a Cerebral subscription via the Cerebral website or mobile app and who (i) were charged by Cerebral for a subscription and (ii) did not receive a full refund or chargeback of all Cerebral subscription charges.

North Carolina Class: All persons in North Carolina who purchased a Cerebral subscription via the Cerebral website or mobile app and who (i) were charged by Cerebral for a subscription and (ii) did not receive a full refund or chargeback of all Cerebral subscription charges.

148.     Excluded from the Classes is Cerebral, its affiliates, employees, officers and directors, and the Judge(s) assigned to this case.

149.     Plaintiffs reserve the right to modify, change, or expand the class definitions if discovery and/or further investigation reveal that the class definitions should be expanded or otherwise modified.

150.     **Numerosity**:  The Class is so numerous that joinder of all members is impracticable. While the exact number and identities of individual members of the Class is unknown at this time, such information being in the sole possession of Cerebral and obtainable by Plaintiffs only through the discovery process, Plaintiffs believe, and on that basis allege, that the Class encompasses at least tens of thousands of individuals whose identities can be readily ascertained from Cerebral's records.

151.     The Class is ascertainable because its members can be readily identified using data and information kept by Cerebral in the usual course of business and within its control. Plaintiff anticipates providing appropriate notice to each Class member, in compliance with all applicable federal rules.

152.     **Existence/Predominance of Common Questions of Fact and Law**: Common questions of law and fact exist as to all members of the Class.  These questions predominate over the questions affecting individual Class members.  These common legal and factual questions include, but are not limited to:

1

a.    Whether Defendant's representations and/or omissions are fraudulent;

2

b.    Whether Defendant's conduct violates the applicable state or territorial consumer

3

protection statutes;

4

c.    Whether Defendant was unjustly enriched as a result of its conduct;

5

d.    Whether Class Members have been injured by Defendant's conduct;

6

e.    Whether, and to what extent, equitable relief and/or other relief should be imposed

7

on Defendant, and, if so, the nature of such relief; and

8

f.    The extent of classwide injury and the measure of damages for those injuries.

9

153.   **Typicality**:  Plaintiffs' claims are typical of the claims of the Class since each of the

10

Plaintiffs were subject to the same or similar marketing, enrollment and billing practices engineered by

11

Defendant, as was each member of the Class. Plaintiffs and Class members were injured in the same

12

manner by Cerebral's uniform course of conduct alleged herein.  Plaintiffs and all Class members have

13

the same claims against Cerebral relating to the conduct alleged herein, and the same events giving rise

14

to Plaintiffs' claims for relief are identical to those giving rise to the claims of all Class Members.

15

Plaintiffs and all Class members sustained monetary and economic injuries arising out of Defendant's

16

conduct. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all

17

absent Class Members.

18

154.   **Adequacy**:  Plaintiffs are adequate representatives for the Class because their interests

19

do not conflict with the interests of the Class that they seek to represent. Plaintiffs have retained counsel

20

competent and highly experienced in complex class action litigation—including consumer fraud class

21

action cases—and they intend to prosecute this action vigorously.  The interests of the Class will be

22

fairly and adequately protected by Plaintiffs and their counsel.

23

155.   **Superiority**:  A class action is superior to all other available means of fair and efficient

24

adjudication of the claims of Plaintiffs and members of the Class. The injury suffered by each individual

25

Class member is relatively small in comparison to the burden and expense of individual prosecution of

26

the complex and extensive litigation necessitated by Cerebral's conduct. It would be virtually impossible

27

for members of the Class to effectively individually redress the wrongs done to them by Cerebral. Even

28

if Class members could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, an economy of scale, and comprehensive supervision by a single court. Upon information and belief, members of the Class can be readily identified and notified.

156.    Cerebral has acted, and/or has refused to act, on grounds generally applicable to the Class, thereby making appropriate final equitable and public injunctive relief with respect to the Class as a whole.

157.    Further, the following issues are also appropriately resolved on a class-wide basis under Fed. R. Civ. P. 23(c)(4):

       a.    Whether Defendant's representations and/or omissions are fraudulent;

       b.    Whether Defendant's conduct violates the applicable state or territorial consumer protection statutes;

       c.    Whether Defendant was unjustly enriched as a result of its conduct;

       d.    Whether Class Members have been injured by Defendant's conduct; and

       e.    Whether, and to what extent, equitable relief and/or other relief should be imposed on Defendant and, if so, the nature of such relief.

158.    Accordingly, this action satisfies the requirements set forth under Fed. R. Civ. P. 23(a), 23(b), and 23(c)(4).

## CAUSES OF ACTION

159.    Plaintiffs bring each of the following claims for relief pursuant to California law because Cerebral's Terms & Conditions specify that the Terms of Use "shall be governed in all respects by the internal substantive laws of the State of California, without regard to its conflict of laws principles."[42] Should the Court not apply California law to Plaintiffs' claims pursuant to this provision, Plaintiffs

---

[42] https://cerebral.com/terms-and-conditions.

allege, in the alternative, that the common law claims should be governed by the Plaintiffs' respective states of residence.

## <u>COUNT I</u>

## **CALIFORNIA FALSE ADVERTISING LAW–VIOLATION OF THE CALIFORNIA AUTOMATIC RENEWAL LAW**

160.    Plaintiffs incorporate by reference all preceding and subsequent paragraphs.

161.    Plaintiff Debono brings this claim on behalf of herself and on behalf of the California Class.

162.    As part of California's False Advertising Law, the California Automatic Renewal Law, CAL. BUS. & PROF. CODE § 17600 *et seq*. became effective on December 1, 2010.

163.    CAL. BUS. & PROF. CODE § 17600, *et seq.*, California's Automatic Purchase Renewal Statute, declares unlawful "the practice of ongoing charging of consumer credit or debit cards  or  third-party payment accounts without the consumers' explicit consent for ongoing shipments of a product or ongoing deliveries of service." Cerebral's conduct as alleged in this Complaint violates CAL. BUS. & PROF. CODE § 17602 because each of the following practices Cerebral has engaged in is an independent violation of the Automatic Purchase Renewal Statute:

a.    Cerebral failed to present the terms of its automatic renewal or continuous service offer in a clear and conspicuous manner before fulfilling the subscription and in visual proximity to the request for consent to the offer, as required by CAL. BUS. & PROF. CODE §§ 17602(a)(1);

b.    Cerebral charged the Plaintiffs' and the Class's credit or debit cards, for an automatic renewal or continuous service without first obtaining the consumer's affirmative consent to the agreement containing the automatic renewal offer terms or continuous offer terms, as required by Cal. Bus. & Prof. Code § 17602(a)(2);

c.    Cerebral failed to provide an acknowledgement that includes the automatic renewal offer terms or continuous offer terms, cancellation policy, and information regarding how to cancel, and to allow Plaintiffs and the Class to cancel, the automatic renewal or continuous service before they paid for it, as required by Cal. Bus. & Prof. Code § 17602(a)(3);

d.    Cerebral failed to provide a toll-free telephone number, electronic mail address, a postal address or another cost-effective, timely, and easy-to-use mechanism for

- 55 -

cancellation described in CAL. BUS. & PROF. CODE §§ 17602(a)(3), as required by CAL. BUS. & PROF. CODE §§ 17602(b);

e.     Cerebral failed to allow Plaintiffs and the Classes to terminate the automatic renewal or continuous service exclusively online, as required by CAL. BUS. & PROF. CODE §§ 17602(c).

f.     Cerebral failed to inform subscribers about a material change in the terms of the automatic renewal or continuous service that had been accepted by a consumer in this state, and failed to provide clear and conspicuous notice of the material change in its Terms and Conditions concerning the cancellation policy and failed to provide information regarding how to cancel in a manner that is capable of being retained by the consumer in violation of §§ 17602(d), 17602(e).

164.    An amended version of the California Automatic Purchase Renewal Law became effective on July 1, 2022. Upon information and belief, Cerebral's ongoing conduct violates the amended version of the statute in manner substantially analogous to that set forth herein.

165.    Plaintiffs and members of the Classes would not have subscribed to Cerebral if they had known the truth and have suffered injury in fact and lost money as a result of Defendant's violations of the Automatic Purchase Renewal Statute.

166.    As a result of Defendant's misconduct, Plaintiffs and the Classes have suffered injury that cannot be remedied without restitution of all amounts that Cerebral charged or caused to be charged to Plaintiffs' and the Class members' credit cards, debit cards, or third-party payment accounts during the applicable statute of limitations and continuing until Cerebral's statutory violations cease. Pursuant to CAL. BUS. & PROF. CODE § 17535, this Court may award such restitution to Plaintiffs and the Classes.

167.    As a result of Defendant's misconduct, pursuant to CAL. BUS. & PROF. CODE § 17535, Plaintiffs and the Classes are entitled to an injunction (a) enjoining Cerebral from making automatic renewal offers that do not comply with California law, (b) from making charges to credit cards, debit cards, or third-party payment accounts without prior affirmative consent to an agreement containing "clear and conspicuous" disclosures of automatic renewal or continuous service offer terms, (c) enjoining Cerebral from making automatic renewal offers that fail to provide an acknowledgment that includes "clear and conspicuous" disclosure of automatic renewal or continuous service offer terms,

cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer, and (d) enjoining Cerebral from making automatic renewal offers that fail to provide an online, easy-to-use mechanism for cancellation.

168.    Pursuant to CAL. BUS. & PROF. CODE § 17535, this Court has the power to award such equitable relief, including but not limited to, an order declaring Defendant's auto-renewal practices to be unlawful, an order enjoining Defendant from engaging in any such further unlawful conduct, and an order directing Defendant to refund to the Plaintiffs and the Classes all monthly fees wrongfully assessed and/or collected. To the extent any of these remedies are equitable, Plaintiffs seek them in the alternative to any adequate remedy of law they may have.

## **COUNT II**
### CALIFORNIA UNFAIR COMPETITION LAW–VIOLATION OF THE CALIFORNIA AUTOMATIC RENEWAL LAW AND DECEPTIVE PRACTICES

169.    Plaintiffs incorporate by reference all preceding and subsequent paragraphs.

170.    Plaintiff Debono brings this claim on her own behalf and on behalf of the California Class.

171.    CAL. BUS. & PROF CODE § 17200, *et seq.* (the "UCL") prohibits acts of "unfair competition," including any unlawful and unfair business acts or practices.

172.    Under the "unlawful" prong of the UCL, a violation of another law is treated as unfair competition and is independently actionable.

173.    As set forth above, Cerebral committed unlawful practices because it violated Cal. Bus. & Prof. Code § 17600, et seq., California's Automatic Purchase Renewal Statute, which declares unlawful "the practice of ongoing charging of consumer credit or debit cards or third-party payment accounts without the consumers' explicit consent for ongoing shipments of a product or ongoing deliveries of service." Defendant's conduct as alleged in this Complaint violates Cal. Bus. & Prof. Code § 17602 because each of the following practices is an independent violation of the Automatic Purchase Renewal Statute:

a.    Cerebral failed to present the terms of its automatic renewal or continuous service offer in a clear and conspicuous manner before fulfilling the subscription and in visual

proximity to the request for consent to the offer, as required by Cal. Bus. & Prof. Code § 17602(a)(1);

b.  Cerebral charged the Plaintiffs' and the Class's credit or debit cards, for an automatic renewal or continuous service without first obtaining the consumer's affirmative consent to the agreement containing the automatic renewal offer terms or continuous offer terms, as required by Cal. Bus. & Prof. Code § 17602(a)(2);

c.  Cerebral failed to provide an acknowledgement that includes the automatic renewal offer terms or continuous offer terms, cancellation policy, and information regarding how to cancel, and to allow Plaintiffs and the Class to cancel, the automatic renewal or continuous service before they paid for it, as required by Cal. Bus. & Prof. Code § 17602(a)(3);

d.  Cerebral failed to provide a toll-free telephone number, electronic mail address, a postal address or another cost-effective, timely, and easy-to-use mechanism for cancellation described in Cal. Bus. & Prof. Code § 17602(a)(3), as required by Cal. Bus. & Prof. Code § 17602(b);

e.  Cerebral failed to allow Plaintiffs and the Classes to terminate the automatic renewal or continuous service exclusively online in the manner required by Cal. Bus. & Prof. Code § 17602(c).

f.  Cerebral failed to inform subscribers about a material change in the terms of the automatic renewal or continuous service that had been accepted by a consumer in this state, and failed to provide clear and conspicuous notice of the material change in its Terms and Conditions concerning the cancellation policy and failed to provide information regarding how to cancel in a manner that is capable of being retained by the consumer in violation of §§ 17602(d), 17602(e).

174.  An amended version of the California Automatic Purchase Renewal Law became effective on July 1, 2022. Upon information and belief, Cerebral's ongoing conduct violates the amended version of the statute in manner substantially analogous to that set forth herein.

175.  Under the "unfair" prong of the UCL, a business practice is unfair if that practice offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.

176.  Defendant also committed unfair acts and practices by, *inter alia*:

a.  Engaging in a marketing and billing program that is likely to mislead a reasonable consumer acting reasonably under the circumstances;

b. Making false promises to customers concerning the availability of appointments they will receive as Cerebral customers, and leading them to believe that they will be able to easily book appointments, and then continuing to charge customers and refusing to refund customers even when they are unable to actually book the appointments Cerebral is charging them for;

c. Using a billing mechanism that automatically charges customers without their awareness or consent and failing to provide adequate disclosures regarding the charges that will be imposed;

d. Omitting material information in order to induce customers into subscribe; and

e. Making it difficult for customers to cancel their subscriptions, even as Cerebral fails to provide the bargained for service.

177.    Plaintiffs and the Classes reserve the right to allege other violations of law which constitute unlawful, unfair, or fraudulent business acts or practices as Defendant's conduct is ongoing and continues to this date.

178.    Defendant's acts and omissions as alleged herein violate obligations imposed by statute, are substantially injurious to consumers, offend public policy, and are immoral, unethical, oppressive and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct.

179.    There were reasonably available alternatives to further Cerebral's legitimate business interests, other than the conduct described herein.

180.    Defendant's acts, omissions, nondisclosures, and misleading statements as alleged herein were and are false, misleading, and/or likely to deceive the consuming public.

181.    As a result of Defendant's unlawful and unfair business practices, Plaintiffs and Class members have suffered an injury in fact and have lost money in an amount to be determined at the trial of this action.

182.    Pursuant to Cal. Bus. & Prof Code §17203 Plaintiffs and the other Class members are entitled to an order: (1) requiring Cerebral to make restitution to Plaintiffs and the Class members; (2) enjoining Defendants from charging Plaintiffs' and Class members' credit cards, debit cards, and/or third party payment accounts until such time as Cerebral obtains the consumer's affirmative consent to an agreement that contains clear and conspicuous disclosures of all automatic renewal or continuous

service offer terms; and (3) enjoining Cerebral from making automatic renewal or continuous service offers that do not comply with the California Automatic Renewal Law. To the extent any of these remedies are equitable, Plaintiffs seek them in the alternative to any adequate remedy at law they may have.

**COUNT III**

**CALIFORNIA FALSE ADVERTISING LAW–DECEPTIVE PRACTICES**

183.   Plaintiffs incorporate by reference all preceding and subsequent paragraphs.

184.   Plaintiffs bring this claim on their own behalf and on behalf of the Classes.

185.   California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.*, makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state, . . . in any advertising device . . . or in any other manner or means whatever, including over the Internet, any statement, concerning . . . personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

186.   Defendant's conduct as alleged herein violates CAL. BUS. & PROF. CODE § 17500 by intentionally making and disseminating statements to consumers in California and the general public from its headquarters in California concerning Defendant's products and services, as well as circumstances and facts connected to such products and services, which are untrue and misleading on their face and by omission, and which are known (or which by the exercise of reasonable care should be known) by Defendant to be untrue or misleading. Defendant has also intentionally made or disseminated such untrue or misleading statements and material omissions to consumers and to the public as part of a plan or scheme with intent not to sell those services as advertised. Upon information and belief, Defendant drafted and disseminated the misleading statements from its headquarters in California and devised its intent to not advertise and sell its services from its California headquarters.

187.   Defendants violated CAL. BUS. & PROF. CODE § 17500 by, *inter alia*:

- 60 -

a.   Engaging in a marketing and billing program that is likely to mislead a reasonable consumer acting reasonably under the circumstances;

b.   Making false promises to customers concerning the availability of appointments they will receive as Cerebral customers, and leading them to believe that they will be able to easily book appointments, and then continuing to charge customers and refusing to refund customers even when they are unable to book the appointments Cerebral is charging them for;

c.   Using a billing mechanism that automatically charges customers without their awareness or consent and failing to provide adequate disclosures regarding the charges that will be imposed;

d.   Omitting material information in order to induce customers to subscribe; and

e.   Making it difficult for customers to cancel their subscriptions, even as Cerebral fails to provide the bargained for service.

188.   Defendant's actions in violation of § 17500, as described herein, were false and misleading such that the general public is and was likely to be deceived.

189.   Plaintiffs and the members of the Classes were deceived by and relied on Defendant's statements and omissions to their detriment when they subscribed to Cerebral and were charged even though Cerebral was unable to provide the promised appointments, and automatically enrolled into Cerebral's auto-recurring subscription, and there is a strong probability that other consumers and members of the public were also or are likely to be deceived as well. Any reasonable consumer would be misled by Defendant's false and misleading statements and material omissions. Plaintiffs and other members of the Classes did not learn of the difficulties in scheduling appointments with Cerebral or Defendant's cancellation and automatic payment policies until after they had already signed up and were forced into paying for Defendant's service.

190.   Plaintiff and the Class lost money or property as a result of Defendant's violations because they would not have subscribed to Cerebral or been charged for monthly subscriptions if the true facts about Cerebral's services, appointment availably, and monthly subscriptions were known to them.

191.   As a result of Defendant's misconduct pursuant to CAL. BUS. & PROF. CODE § 17500, Plaintiffs and the Classes are entitled to individual, representative, and public injunctive relief and any

other necessary orders or judgments that will prevent Defendant from continuing with their false and deceptive advertisements and omissions; restitution that will restore the full amount of their money or property; disgorgement of Defendant's relevant profits and proceeds; and an award of costs and reasonable attorneys' fees. To the extent any of these remedies are equitable, Plaintiffs seek them in the alternative to any adequate remedy at law they may have.

### COUNT IV

**CALIFORNIA CONSUMERS LEGAL REMEDIES ACT–VIOLATION OF THE CALIFORNIA AUTOMATIC RENEWAL LAW**

192.    Plaintiffs incorporate by reference all preceding and subsequent paragraphs.

193.    Plaintiff Debono brings this claim on her own behalf and on behalf of the California Class.

194.    The California Consumers Legal Remedies Act (the "CLRA"), CAL. CIV. CODE § 1770(a)(14) , prohibits "[r]epresenting that a transaction confers or involves rights, remedies, or obligations that it does not have or involve, or that are prohibited by law."

195.    Defendant violated, and continue to violate the CLRA by representing that Cerebral has rights and remedies that it does not have, specifically that it has the right to charge Plaintiffs and the Class members' payment methods without first making the statutorily required disclosures under California's Automatic Purchase Renewal Statute and obtaining their affirmative consent to the agreement containing the automatic renewal terms and continuous offer terms, and through other conduct described above, in violation of California's Automatic Purchase Renewal Statute. Cerebral does not have the legal right to charge for these subscriptions because at all relevant times, it was not in compliance with California's Automatic Purchase Renewal Statute.

196.    Plaintiffs and the Class members are "consumers" within the meaning of CAL. CIV. CODE § 1761(d) in that Plaintiffs and the Class members sought or acquired Defendant's services for personal, family, or household purposes.

197.    The therapy and other services offered through Defendant's mental health app constitute "services" within the meaning of CAL. CIV. CODE § 1761(a) and (b).

198.    Plaintiffs have standing to pursue these claims because they have suffered injury in fact and a loss of money and/or property as a result of the wrongful conduct alleged herein.  Plaintiffs would not have subscribed to Cerebral's monthly subscriptions had they known the truth.

199.    The purchases by Plaintiffs and the Class members are "transactions" within the meaning of CAL. CIV. CODE § 1761(e)

200.    As a direct and proximate result of result of Defendant's violations of the CLRA, Plaintiffs and the Class members were wrongfully charged for subscriptions to Cerebral.

201.    Defendant's conduct alleged herein was undertaken by Defendant knowingly, willfully, and with oppression, fraud, and/or malice, within the meaning of CAL. CIV. CODE § 3294(c).

202.    Plaintiffs Barber and Debono sent a CLRA notice on behalf of themselves and a Class of similarly situated individuals to Cerebral on June 8, 2022, providing the notice required by CAL. CIV. CODE § 1782. Defendant did not cure the violations of the CLRA alleged herein within the 30 day cure period. Accordingly, Plaintiffs Barber and Debono assert a claim for damages. Plaintiff Atherton seeks only injunctive relief pursuant to this claim at this time.

203.    Plaintiffs further seek an order awarding costs of court and attorneys' fees pursuant to CAL. CIV. CODE 1780(d).

204.    Attached hereto as Exhibit "A" are CLRA venue declarations submitted pursuant to CAL. CIV. CODE 1780(d).

205.    To the extent any of these remedies are equitable, Plaintiffs seek them in the alternative to any adequate remedy of law they may have.

## **COUNT V**

## **CALIFORNIA CONSUMERS LEGAL REMEDIES ACT–DECEPTIVE PRACTICES**

206.    Plaintiffs incorporate by reference all preceding and subsequent paragraphs.

207.    Plaintiffs bring this claim on their own behalf and on behalf of the Nationwide Class.

208.    The CLRA, CAL. CIV. CODE § 1750, *et seq*., prohibits "unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer."

209.    Plaintiffs and the Class members are "consumers" within the meaning of CAL. CIV. CODE § 1761(d) in that Plaintiffs and the Class members sought or acquired Defendant's services for personal, family, or household purposes.

210.    The therapy and other services offered through Defendant's mental health app constitute "services" within the meaning of CAL. CIV. CODE § 1761(a) and (b).

211.    Plaintiffs have standing to pursue these claims because they have suffered injury in fact and a loss of money and/or property as a result of the wrongful conduct alleged herein. Plaintiffs would not have subscribed to Cerebral's monthly subscriptions had they known the truth.

212.    The purchases by Plaintiffs and the Class members are "transactions" within the meaning of CAL. CIV. CODE § 1761(e)

213.    Defendant violated CAL. CIV. CODE § 1770, subdivisions (a)(5), (a)(9), (a)(14) and (a)(16) by, *inter alia*, representing that Cerebral's goods and services have certain characteristics that they do not have; advertising goods and services with the intent not to sell them as advertised; representing that a transaction confers or involves rights, remedies, or obligations that it does not have or involve, or that are prohibited by law; and representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not.

214.    As a direct and proximate result of result of Defendant's violations of the CLRA, Plaintiffs and the Class members were wrongfully charged fees for monthly subscriptions to Cerebral's app.

215.    Defendant's conduct alleged herein was undertaken by Defendant knowingly, willfully, and with oppression, fraud, and/or malice, within the meaning of CAL. CIV. CODE § 3294(c). Upon information and belief, Defendant's representations and advertisements were drafted and disseminated from its California headquarters.

216.    Plaintiffs Barber and Debono sent a CLRA notice on behalf of themselves and a Class of similarly situated individuals to Cerebral on June 8, 2022, providing the notice required by CAL. CIV. CODE § 1782. Plaintiff Atherton sent Cerebral a CLRA notice on October 3, 2022. Defendant did not cure the violations of the CLRA alleged herein within the 30-day cure period, and thus Plaintiffs Barber and Debono assert a demand for damages.

217.    Plaintiffs further seek an order awarding costs of court and attorneys' fees pursuant to CAL. CIV. CODE 1780(d).

218.    Attached hereto as Exhibit "A" are CLRA venue declarations submitted pursuant to CAL. CIV. CODE 1780(d).

219.    To the extent any of these remedies are equitable, Plaintiffs seek them in the alternative to any adequate remedy of law they may have.

## COUNT VI

### BREACH OF CONTRACT

229.    Plaintiffs incorporate by reference all preceding and subsequent paragraphs.

230.    Plaintiffs bring this claim individually and on behalf of the Classes.

231.    Plaintiffs and Defendant entered into contracts for membership subscriptions to access mental health and counseling services through the Cerebral app.

232.    As a part of its membership contract, Cerebral agreed to abide by certain policies with regard to the availability of mental health services and the ease of cancelling the autorenewing subscription.

233.    Plaintiffs have fully performed all material covenants, conditions and obligations that they were required to perform by reason of their contracts, except to the extent waived, excused, or made impossible by Defendant's breaches of the contract, including by following Cerebral's cancellation procedures as outlined in its terms and conditions.

234.    On the other hand, the Plaintiffs never agreed that Defendant could charge them and then not deliver the promised services, and then continue to charge them monthly after requesting

cancellation. This term is not part of the parties' contracts with one another, and Defendant did not have the right to act as such under the terms of its agreements with Plaintiffs. Defendant breached the terms of the contract by not upholding its end of the bargain in providing the mental healthcare services that Plaintiffs and Class Members believed they were signing up for. Further, Defendant breached the contract by not adhering to its own cancellation policy and cancelling Plaintiffs and Class Members' subscriptions promptly upon Plaintiffs' requesting cancellation.

235.    Defendant's conduct frustrated the entire purpose of the contract and the reasons for why Plaintiffs contracted with Defendant in the first place, and materially breached its contracts with Plaintiffs, which had the direct and proximate effect of causing damages to Plaintiffs in an amount to be proven at trial, plus interest allowable under applicable law.

236.    Plaintiffs demand an award of any consequential damages, reasonable attorneys' fees and costs, and any other relief afforded under California law.

## <u>COUNT VII</u>

## BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

229.    Plaintiffs repeat, reallege, and incorporate by reference each of the foregoing allegations as though fully set forth herein.

230.    Plaintiffs bring this claim individually and on behalf of the Classes pursuant to California law.

231.    A covenant of good faith and fair dealing is implied in every contract and imposes upon each party a duty of good faith and fair dealing in its performance of the contract. Common law calls for substantial compliance with the spirit, not just the letter, of a contract in its performance. The duty to act in good faith and deal fairly requires adherence to commercial norms and prevents a contracting party from acting in contravention of the counterparty's objectively reasonable expectations arising from the agreement.

232.    Cerebral breached the covenant of good faith and fair dealing when it induced Class members to subscribe, charged them, failed to provide the promised services, and continued to charge

Class members. Specifically, Cerebral frustrated the purpose of the contracts and interfered with Plaintiffs rights to receive the benefits of the contract by, *inter alia*, failing to provide access to adequate prescribers and counselors as promised, making scheduling appointments unnecessarily tedious, and making it nearly impossible to cancel unwanted subscriptions. Cerebral also did not exercise good faith in failing to refund Plaintiffs for subscription fees it charged them after the Plaintiffs requested cancellation.

233.    All conditions required for Plaintiffs' and the Class members' performance under the agreement occurred.  Plaintiffs' and Class members' were uniformly and materially subject to Cerebral's conduct.

234.    As a direct and proximate result of Cerebral's breaches of the covenant of good faith and fair dealing, Plaintiffs and Class members have been damaged in an amount to be proven at trial.

### COUNT VIII

### UNJUST ENRICHMENT/QUASI CONTRACT

220.    Plaintiffs incorporate by reference all preceding and subsequent paragraphs.

235.    Plaintiffs bring this claim individually and on behalf of the Classes.

236.    This claim is pleaded in the alternative to Plaintiffs' contract claims.

237.    As the intended and expected result of its conscious wrongdoing, Defendant has profited and benefited from the purchase of subscriptions by Plaintiffs and the Class that are devalued or otherwise worth less due to unavailability of appointments and services. Defendant has also profited and benefited from the subscription fees themselves and from continuing to charge consumers even when they cannot use Cerebral's services, which Plaintiffs and Class members did not know when they subscribed.

238.    Defendant has voluntarily accepted and retained these profits and benefits, with full knowledge and awareness that, as a result of Defendant's misconduct alleged herein, Plaintiffs and the Class were not receiving services of the quality, nature, fitness, or value that had been represented by Defendant, and that a reasonable consumer would expect. Specifically, Plaintiffs and the Class members

expected that they would be able to use Cerebral's services and be able to cancel whenever they wanted, while Defendant has instead been engaging in a money-grab, bait and switch ploy.

239.    Defendant has been unjustly enriched by its fraudulent, deceptive, unlawful, and unfair conduct, and withholding of benefits and unearned monies from Plaintiffs and the Class, at the expense of these parties.

240.    Equity and good conscience militate against permitting Defendant to retain these profits and benefits.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, hereby request that this Court enter an Order against Defendant providing the following:

A.    Certification of the proposed Classes, appointment of Plaintiffs and their counsel to represent the proposed Classes, and notice to the proposed Class to be paid for by Defendant;

B.    An order temporarily and permanently enjoining Defendant from continuing the unlawful, deceptive, fraudulent, and unfair business practices alleged in this Complaint;

C.    Enter an order granting all appropriate relief, including public injunctive relief, on behalf of the Class under the applicable laws;

D.    An award of compensatory damages to Plaintiffs and members of the Class in an amount according to proof at trial;

E.    Determine that Defendant has committed the violations of law alleged herein;

F.    Determine that Defendant has been unjustly enriched as a result of its wrongful conduct, and enter an appropriate order awarding restitution and monetary damages to the Class;

G.    Costs, restitution, damages, including punitive damages, treble damages, penalties, and disgorgement in an amount to be determined at trial;

H.    An order for Defendant to pay pre- and post-judgment interest on any amounts awarded;

I.    An award of costs and attorneys' fees; and

J.    Such other or further relief as may be appropriate.

- 68 -

1

## **JURY DEMAND**

2

Plaintiffs hereby demand a trial by jury for all claims so triable.

3

4

Respectfully submitted,

5

6

Dated:  April 17, 2023

*/s/ Elizabeth A. Kramer*

7

8

Elizabeth A. Kramer (SBN 293129)
**ERICKSON KRAMER OSBORNE**
44 Tehama Street
San Francisco, California 94105
Tel. (415) 635-0631
elizabeth@eko.law

9

10

11

12

**SHUB & JOHNS LLC**
Benjamin F. Johns (*pro hac vice*)
Samantha E. Holbrook (*pro hac vice*)
Four Tower Bridge
200 Barr Harbor Drive, Suite 400
West Conshohocken, PA 19428
Tel. (610) 477-8380
bjohns@shublawyers.com
sholbrook@shublawyers.com

13

14

15

16

17

18

19

*Counsel for Plaintiffs and the Putative Class*

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I hereby certify that on April 17, 2023, I electronically filed the foregoing with the Clerk of the

Court using the CM/ECF system which will send notification of such filing to all parties registered on

the CM/ECF system.

DATED at San Francisco, California, this 17th day of April, 2023.


/s/ Elizabeth A. Kramer
Elizabeth A. Kramer

# EXHIBIT A

1    Elizabeth A. Kramer (SBN 293129)
     *elizabeth@eko.law*
2    **ERIKSON KRAMER OSBORNE**
     44 Tehama St.
3    San Francisco, California 94105
     Tel: (510) 919-2347
4
     Benjamin F. Johns (*pro hac vice*)
5    *bfj@chimicles.com*
     Samantha E. Holbrook (*pro hac vice*)
6    *seh@chimicles.com*
     Alex M. Kashurba (*pro hac vice*)
7    *amk@chimicles.com*
     **CHIMICLES SCHWARTZ KRINER**
8      **& DONALDSON-SMITH LLP**
     361 W. Lancaster Avenue
9    Haverford, Pennsylvania 19041
     Tel: (610) 642-8500
10   Fax: (610) 649-3633

11   *Counsel for Plaintiffs and the Putative Class*

12

13                 **UNITED STATES DISTRICT COURT**
                 **NORTHERN DISTRICT OF CALIFORNIA**
14                    **SAN FRANCISCO COUNTY**

15   CHERIE DEBONO, VICTORIA BARBER, and        Case No. 3:22-cv-003378-AGT
     JESSICA   ATHERTON   individually   and   on
16   behalf of all others similarly situated,           **CLRA VENUE DECLARATION OF**
                                                  **PLAINTIFF JESSICA ATHERTON**
17                            Plaintiffs,          **PURSUANT TO CALIFORNIA CIVIL**
                                                  **CODE SECTION 1780(d)**
18            v.

19   CEREBRAL, INC.                               **DEMAND FOR JURY TRIAL**

20                            Defendant.

21

22

23

24

25

26

27

28

I, Jessica Atherton, declare as follows:

1       I have personal knowledge of the facts stated herein and, if called upon to do so, could competently testify thereto.

2.      I am a Plaintiff in the above-captioned action.

3.      I submit this declaration in support of the Amended Class Action Complaint, which is based in part on violations of the Consumers Legal Remedies Act, California Civil Code §§ 1750 et seq.

4.      The Class Action Complaint has been filed in the proper place for trial of this action.

5.      Defendant Cerebral, Inc. has its principal place of business in San Francisco, CA which is within San Francisco County. Cerebral conducts substantial business, including the acts and practices at issue in this action, within San Francisco County.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge.

Executed on September 28, 2022 in Garner, North Carolina.

_____
Jessica Atherton

1   Elizabeth A. Kramer (SBN 293129)
    *elizabeth@eko.law*
2   **ERIKSON KRAMER OSBORNE**
    44 Tehama St.
3   San Francisco, California 94105
    Tel: (510) 919-2347
4
    Benjamin F. Johns (*pro hac vice*)
5   *bfj@chimicles.com*
    Samantha E. Holbrook (*pro hac vice*)
6   *seh@chimicles.com*
    Alex M. Kashurba (*pro hac vice*)
7   *amk@chimicles.com*
    **CHIMICLES SCHWARTZ KRINER**
8     **& DONALDSON-SMITH LLP**
    361 W. Lancaster Avenue
9   Haverford, Pennsylvania 19041
    Tel: (610) 642-8500
10  Fax: (610) 649-3633

11  *Counsel for Plaintiffs and the Putative Class*

12

13                  **UNITED STATES DISTRICT COURT**
                **NORTHERN DISTRICT OF CALIFORNIA**
14                   **SAN FRANCISCO COUNTY**

15  CHERIE DEBONO, VICTORIA BARBER, and        Case No. 3:22-cv-003378-AGT
    JESSICA ATHERTON individually and on
16  behalf of all others similarly situated,        **CLRA VENUE DECLARATION OF**
                                                **PLAINTIFF CHERIE DEBONO**
17                      Plaintiffs,             **PURSUANT TO CALIFORNIA**
                                                **CIVIL CODE SECTION 1780(d)**
18          v.
                                                **DEMAND FOR JURY TRIAL**
19  CEREBRAL, INC.

20                      Defendant.

21

22

23

24

25

26

27

28

                                    CLRA DECLARATION OF PLAINTIFF CHERIE DEBONO

I, Cherie Debono, declare as follows:

      1      I have personal knowledge of the facts stated herein and, if called upon to do so, could competently testify thereto.

      2.     I am a Plaintiff in the above-captioned action.

      3.     I submit this declaration in support of the Class Action Complaint, which is based in part on violations of the Consumers Legal Remedies Act, California Civil Code §§ 1750 *et seq*.

      4.     The Class Action Complaint has been filed in the proper place for trial of this action.

      5.     Defendant Cerebral, Inc. has its principal place of business in San Francisco, CA which is within San Francisco County. Cerebral conducts substantial business, including the acts and practices at issue in this action, within San Francisco County.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge.

Executed on June 8, 2022 in Alameda, California.

 

_____

Cherie Debono

1  Elizabeth A. Kramer (SBN 293129)
   *elizabeth@eko.law*
2  **ERIKSON KRAMER OSBORNE**
   44 Tehama St.
3  San Francisco, California 94105
   Tel: (510) 919-2347
4
   Benjamin F. Johns (*pro hac vice*)
5  *bfj@chimicles.com*
   Samantha E. Holbrook (*pro hac vice*)
6  *seh@chimicles.com*
   Alex M. Kashurba (*pro hac vice*)
7  *amk@chimicles.com*
   **CHIMICLES SCHWARTZ KRINER**
8  **  & DONALDSON-SMITH LLP**
   361 W. Lancaster Avenue
9  Haverford, Pennsylvania 19041
   Tel: (610) 642-8500
10 Fax: (610) 649-3633

11 *Counsel for Plaintiffs and the Putative Class*

12

13                 **UNITED STATES DISTRICT COURT**
                **NORTHERN DISTRICT OF CALIFORNIA**
14                   **SAN FRANCISCO COUNTY**

15 CHERIE DEBONO, VICTORIA BARBER, and      Case No. 3:22-cv-003378-AGT
   JESSICA ATHERTON individually and on
16 behalf of all others similarly situated,   **CLRA VENUE DECLARATION OF**
                                              **PLAINTIFF VICTORIA BARBER**
17                                            **PURSUANT TO CALIFORNIA**
                    Plaintiffs,               **CIVIL CODE SECTION 1780(d)**
18        v.
                                              **DEMAND FOR JURY TRIAL**
19 CEREBRAL, INC.

20                  Defendant.

21

22

23

24

25

26

27

28

                                    CLRA DECLARATION OF PLAINTIFF VICTORIA BARBER

1    I, Victoria Barber, declare as follows:

2    1       I have personal knowledge of the facts stated herein and, if called upon to do so,

3    could competently testify thereto.

4    2.      I am a Plaintiff in the above-captioned action.

5    3.      I submit this declaration in support of the Class Action Complaint, which is based in part on

6    violations of the Consumers Legal Remedies Act, California Civil Code §§ 1750 *et seq*.

7    4.      The Class Action Complaint has been filed in the proper place for trial of this action.

8    5.      Defendant Cerebral, Inc. has its principal place of business in San Francisco, CA which is

9    within San Francisco County. Cerebral conducts substantial business, including the acts and practices

10   at issue in this action, within San Francisco County.

11

12   I declare under penalty of perjury under the laws of the United States that the foregoing is true and

13   correct to the best of my knowledge.

14

15   Executed on June 8, 2022 in Anacortes, Washington.

16

17                                                    _____

18                                                                    Victoria Barber